1                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA

2                    MIAMI DIVISION

3             CASE NO. 07-20772-CR-MORENO

    _____

4                   |        MIAMI, FLORIDA
    UNITED STATES OF AMERICA,   |

5                   |
             Plaintiff,    |      FEBRUARY 12, 2008

6                   |
       vs.             |

7                   |
    SAUL ANDRES WYNTER,      |

8    DULCE CASTELLANOS,       |
                   |

9            Defendants.   |      TRIAL DAY 6
    _____x

10

11           TRANSCRIPT OF RULE 29 ARGUMENTS
       BEFORE THE HONORABLE FEDERICO A. MORENO,

12           UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  FOR THE GOVERNMENT:     WILLIAM H. BRYAN, III, ESQ.
                         SUSAN OSBORNE, ESQ.

15                         Assistant U.S. Attorneys
                         99 Northeast 4th Street

16                         Miami, FL 33132     305.961.9000

17  FOR DEFENDANT WYNTER:   NATHAN P. DIAMOND, ESQ.
                         1221 Brickell Avenue

18                         Miami, FL 33131     305.371.5300

19                         VINCENT J. FLYNN, ESQ.
                         1450 Brickell Bay Drive

20                         Miami, FL 33131     305.858.1414

21  FOR DEFENDANT         GEORGE J. VILA, ESQ.
    CASTELLANOS:          1221 Brickell Avenue

22                         Miami, FL 33131     305.373.5705

23  REPORTED BY:          LARRY HERR, RPR-RMR-FCRR-AE
                         Official United States Court Reporter

24                         Federally Certified Realtime Reporter
                         400 North Miami Avenue, Room 8NO9

25                         Miami, FL  33128    305.523.5290

2

TABLE OF CONTENTS

Page

Reporter's Certificate ................................... 41

CITATIONS

Page

Alvarez ................................................. 36

Bolinger ................................................ 22

Kotteakas ............................................... 24

Newton, 44 F.3d 913, 11th Circuit ....................... 21

U.S. vs. Helso .......................................... 12

U.S. vs. Pinkerton, 328 U.S. 640 ........................ 36

United States vs. High .................................. 22

United States vs. Molina ................................ 21

United States vs. Mother Sill, 87 F.3d 1214, 1996 .......... 36

United States vs. Pinkerton .............................. 28

1        *           *           *           *           *           *

2              THE COURT:  What say the defense, Mr. Vila?

3              MR. VILA:  Your Honor, pursuant to Rule 29 of the

4    Federal Rules of Criminal Procedure, we move for a judgment of

5    acquittal on Counts 1, Counts 4 and Counts 6.

6              And, Judge, what I'd like to do, with the Court's

7    permission, is go over each individual count.

8              May I proceed?

9              THE COURT:  Of course.

10             MR. VILA:  Your Honor, in Count 1 of the indictment

11   Ms. Castellanos is charged in a conspiracy with the intent to

12   possess and distribute cocaine and heroin.  There has been

13   absolutely no evidence that Ms. Castellanos ever was present in

14   any meetings, met with anyone, spoke with anyone, agreed to

15   become a participant of any drug conspiracy.

16             There is no evidence that she was even present when

17   drugs were -- the conversations of drugs, quantity or money was

18   ever spoken.  The only evidence that there is is the 38 grams

19   that were found inside of a fanny pack that was found on the

20   side of a night table.

21             THE COURT:  When you say a night table, whose night

22   table in whose bedroom?

23             MR. VILA:  It was the master bedroom of the residence

24   located at 5046.

25             THE COURT:  Whose residence is that?  Whose bedroom is

1  that?

2          MR. VILA:  It's a master bedroom.

3          THE COURT:  Whose bedroom?

4          MR. VILA:  It's Martin Castellanos and Dulce

5  Castellanos.

6          THE COURT:  Your client's master bedroom, right?

7          MR. VILA:  Martin Castellanos, husband and wife.

8          THE COURT:  Husband and wife?

9          MR. VILA:  Husband and wife.

10         THE COURT:  Were there other items?

11         MR. VILA:  Yes.  There was --

12         THE COURT:  Scales?

13         MR. VILA:  There were scales inside the pouch.

14         THE COURT:  In the master bedroom?

15         MR. VILA:  Inside the drawer.  There's no evidence --

16         THE COURT:  Inside whose drawer?

17         MR. VILA:  Martin Castellanos.

18         THE COURT:  What do you mean Martin Castellanos?

19         MR. VILA:  The night table belongs to Martin

20  Castellanos.

21         THE COURT:  How do you know it's not a night table

22  belonging to Dulce Castellanos in their joint master bedroom?

23         MR. VILA:  Judge, there's two night tables.  There was

24  a picture shown where the fanny pack itself was found inside of

25  a drawer that had a men's belt and a men's watch.

1        There is nothing to suggest that that night table

2  belonged to Dulce Castellanos.  All you have here is mere

3  presence.  There's a number of cases that mere presence or mere

4  association with anyone is not enough for a conviction for a

5  drug conspiracy.  There has to be more.

6        THE COURT:  You would concede that if it was in the

7  other night table, then it would be no?

8        MR. VILA:  No.

9        THE COURT:  So then it doesn't matter where it is.

10        MR. VILA:  Well, the evidence is stronger to suggest

11  that it was in the night table belonging to Martin Castellanos.

12        THE COURT:  The case is stronger against the husband?

13        MR. VILA:  Martin Castellanos is the individual that

14  was identified by witnesses.  There was evidence that he walked

15  into the house in Miramar, which was a stash house.

16        Regarding Dulce Castellanos, there's nothing, there's

17  nothing, thee's no monetary deliveries, there's nothing of her

18  delivering any drugs, picking any drugs.  Absolutely nothing.

19  There is no evidence that she agreed that she participated in

20  any conspiracy.

21        And, Judge, for those reasons I move for a judgment of

22  acquittal on that count.

23        The second count is a conspiracy to engage in money

24  laundering.  And involved in that count is Martin Castellanos

25  again and William Martinez.

1           The only evidence that the Government has shown is

2   this summary chart.  Mere deposits.  It has not -- there is

3   absolutely no evidence where these cash deposits or the cash

4   used for these deposits came from, if it came from any illegal

5   activity, the source, who gave it to her when, nothing.  Just

6   mere deposits.  That's all we have.

7           The Government introduced a bank account with Dulce

8   Castellanos and William N. Martinez, a minor, not the father,

9   the older Martinez.

10          THE COURT:  So whose money is this?

11          MR. VILA:  Whose money is which?

12          THE COURT:  The deposits?

13          MR. VILA:  It's Dulce Castellanos.  Let's say it's

14  Dulce Castellanos.

15          THE COURT:  I don't know.

16          MR. VILA:  The Government has not shown whose money

17  this is, where it's coming from.

18          THE COURT:  Well, if you deposit money into an

19  account, it's usually your money, right?

20          MR. VILA:  Let's assume it is hers.

21          THE COURT:  Sometimes people deliver it.  Sometimes I

22  guess someone, if they're going to the bank, hey, can you make

23  a deposit here for me?  That's fine.  How many deposits were

24  made here?  A bunch?

25          MR. VILA:  Judge, not a bunch.

1          THE COURT:  How many?

2          MR. VILA:  In deposits belonging to Dulce Castellanos

3   in over three years totals $58,000

4          THE COURT:  How many deposits?

5          Mr. Bryan, do you know how many deposits?

6          MR. BRYAN:  Judge, actually --

7          MR. VILA:  Judge, I have 27.

8          THE COURT:  That's a bunch.

9          MR. VILA:  In over three years.

10          Judge, I deposit twice a week.

11          THE COURT:  I'm glad.  That's good.  So 27 deposits in

12   over three years is not a lot.

13          And how much money?

14          MR. VILA:  Deposits only dealing with Dulce

15   Castellanos is $49,000.  And that's all they have is mere

16   deposits.

17          THE COURT:  Mere cash deposits, that's all they have?

18          MR. VILA:  And small ones, Judge.  The evidence here

19   was multi-kilo transactions, hundreds of thousands of dollars.

20          Let me read some of the deposits:  $600, six months

21   later $1200, $900, $2800.

22          THE COURT:  All in cash?

23          MR. VILA:  Cash.

24          THE COURT:  Are they running a cafeteria or something

25   like that or what?  A barber shop?

```
 1              MR. VILA:  Judge, like I said in my opening, she
 2   worked.  She had clients.  Clients paid her in checks and some
 3   clients paid her in cash.
 4              THE COURT:  And what was the biggest deposit?
 5              MR. VILA:  The biggest deposit that I see here, Judge,
 6   was $6,000.
 7              THE COURT:  And her business is what?
 8              MR. VILA:  Her business is that she has a office where
 9   she helps clients prepare these Immigration applications,
10   passport applications, she's a notary.  She helps them with the
11   income taxes and so forth.
12              THE COURT:  So it's the people who are not well versed
13   in business?
14              MR. VILA:  Yes, Judge.  There is a number of these
15   offices.
16              THE COURT:  $6,000?  That's a lot of people like that,
17   no?
18              MR. VILA:  Well, that's one.  That's the biggest.
19              THE COURT:  Can't you circumstantially say drugs,
20   co-conspirators, cash deposits, relationship, all of that put
21   together is enough for a conspiracy.  Why isn't that enough?
22              MR. VILA:  Judge, I think there has to be a nexus.
23   There has to be a link between the cash and the illegal
24   activity.
25              THE COURT:  I'm going to ask Mr. Bryan, and then I'm
```

1  going to ask you what you think.

2       Okay.  What's the link between drugs and the money

3  deposited by Dulce Castellanos?

4       MR. BRYAN:  Yes, Your Honor.

5       We start again from the beginning of the conspiracy.

6  There's Saul Wynter, there's William Martinez, and a little bit

7  later on the witnesses indicated that they also saw --

8       THE COURT:  Let's assume you have proven a drug

9  conspiracy between -- that the defense would concede between

10  Martin Castellanos and Martinez.  I think maybe even the

11  defendant would concede that.  Would you concede that?

12       MR. FLYNN:  Judge, I mean, I've seen the evidence.  I

13  concede that.

14       THE COURT:  Of course.  And it also helps them.

15  That's why I picked those two, Martin Castellanos and Martinez.

16       MR. BRYAN:  Yes, Your Honor.

17       THE COURT:  So what's the link between that and the

18  money?

19       MR. BRYAN:  After having several seizures involving

20  William Martinez in March of 2007 --

21       THE COURT:  Seizures of what?

22       MR. BRYAN:  Cocaine at Neal Munroe's residence.

23       And then after that, the seizure, at least watching

24  him go into the stash house apartment with the roller bag and

25  come out.  We also find later on that in that same residence

1   there was approximately eight kilos of heroin they got stashed

2   in that residence again in March of 2007.

3          THE COURT:  You have proven a drug conspiracy between

4   these two people.  What's the link to the money?  Is it the

5   timing of the deposits?

6          MR. BRYAN:  It's several things, Your Honor.

7          First, in March the defendant is walking out of her

8   house with two large bags containing approximately $187,000 in

9   cash.

10          THE COURT:  That's a lot of help to immigrants and

11   people who want to file taxes.

12          MR. VILA:  Judge, there is no evidence that she had

13   any knowledge or that she knew what was inside those bags.

14          THE COURT:  So it's lack of knowledge of those bags.

15   Knowledge of the deposits, obviously.  But lack of knowledge of

16   the content of those bags.

17          MR. VILA:  Yes.  And, Judge, that deals with Count 3

18   of the money laundering.  And I might as well go ahead and

19   argue that one.

20          THE COURT:  You don't mean Count 3.  The third count

21   for you, but it's Count 6.

22          MR. VILA:  Count 6.  The March 15th, the 150,000.  My

23   argument there is that mere presence of cash or having cash is

24   not a crime.

25          THE COURT:  The cash was being carried from where to

1    where?

2            MR. VILA:  From the residence to the --

3            THE COURT:  Whose residence?

4            MR. VILA:  From Dulce Castellanos'.

5            THE COURT:  To where?

6            MR. VILA:  To an Expedition.

7            THE COURT:  And in the residence there's evidence of

8    drug dealing, isn't there?

9            MR. VILA:  Yes.  There is drugs, there is scales, yes.

10           THE COURT:  The only thing that's missing are

11   customers picking a number and that kind of a thing.

12           Now, why isn't that enough?  I mean, do you need

13   someone to say this money is dirty.  Someone has to actually

14   say that?  She's carrying the bags.

15           MR. VILA:  Judge, there has to be a link, but --

16           THE COURT:  The link is scales, drugs and money.

17           MR. VILA:  How do we know that that money -- first,

18   how is that a financial transaction?  Secondly, how does that

19   affect interstate and foreign commerce?  And I think that's

20   what the statute requires.

21           THE COURT:  You mean in order to launder money you

22   have to make a deposit in a bank?

23           MR. VILA:  In a bank, transport it from one state to

24   another.

25           THE COURT:  If I bring money from a foreign country,

1   that's not money laundering until it's deposited in a bank.

2          MR. VILA:  I didn't say deposit it, Judge.  I said

3   there has to be interstate commerce, foreign commerce.

4          Here just walking from her residence to a truck and

5   driving away.

6          THE COURT:  Interstate commerce, how is that proven?

7          MR. BRYAN:  Your Honor, first, the case law presumes

8   interstate nexus when there is drug trafficking involved as the

9   specified unlawful activity.

10          Secondly, in this particular instance, the defendant

11  was -- again, the circumstances of the case being taken in

12  whole, the law enforcement officers had stopped her husband.

13  The husband's telephone is ringing off the hook.  Agents then

14  go to the residence and what do they find?  The defendant's

15  wife is bringing cash out of the house and carrying it in bags

16  and bringing it to the truck and she gets in the truck and

17  takes off.

18          It is assumed that she is taking that cash not to

19  go -- she's taking that cash to some destination.  She's

20  delivering that cash to some place or some person.

21          And in this instance, it is very similar to the case

22  of U.S. vs. Helso wherein Mr. Helso grabbed a bag of cash, put

23  it in his trunk and began to transport it to another location

24  when he was stopped by law enforcement officers, and the court

25  held that that was a financial transaction because he was

1  delivering the money to an individual.  And that's the

2  transaction that the court found, which is the same instance in

3  this case.

4           The defendant's transaction is grabbing that cash,

5  running out of the house and putting it in the car to take it

6  somewhere to deliver it to someone or stash it somewhere which

7  would constitute the transaction, Your Honor.

8           MR. VILA:  Judge, we don't know where she was going

9  with that money.  She was stopped.

10          THE COURT:  How much as in the Helso case?

11          To show you what a great city we live in, Juan Helso

12  was my assigned public defender when I was a state judge.  A

13  nice guy that obviously lost his way.

14          What did he get?  Twenty years?  Something like that?

15  Ten years.  So, in any event, I think there was a little bit of

16  a looting and it's in a car, and there were some statements

17  made from what I remember about the case.

18          But how about the evidence of the drug conspiracy?

19          MR. BRYAN:  As to this defendant, Your Honor?

20          THE COURT:  Yes, that's the one we are talking about.

21          MR. BRYAN:  With respect to the defendant's house, the

22  evidence is clear.

23          THE COURT:  The house is not on trial.

24          MR. BRYAN:  In addition to that, the defendant is

25  linked to the stash house through several items.

```
 1              THE COURT:  Okay.  Tell me.

 2              MR. BRYAN:  First, she issued, I believe it was two or

 3   three checks.  She wrote those checks out to the landlord at

 4   the stash house location.  So she was aware that there was a

 5   stash house being held, that there was at least a house that

 6   they were renting that was not their own personal residence

 7   that she actually wrote checks to.

 8              THE COURT:  So any time a wife writes out checks for a

 9   second property, that's evidence of a drug conspiracy?

10              MR. BRYAN:  We would say it was circumstantial

11   evidence combined with everything else.

12              THE COURT:  Well, you got to tell me what the

13   everything else is.  She's associated with her husband.

14              MR. BRYAN:  They have drugs in their house together.

15              THE COURT:  Tell me where are the drugs?

16              MR. BRYAN:  The drugs are in the bedroom.

17              THE COURT:  In which night table?

18              MR. BRYAN:  They're on -- I'm not sure which of the

19   two.

20              THE COURT:  Well, Mr. Vila says a lot of people have

21   his and hers wash basin, sinks, his and hers night tables.

22              MR. BRYAN:  But they didn't have his and her scales

23   sitting out on a large table.

24              THE COURT:  Scales are out in the open.

25              MR. BRYAN:  They had a large stash of money underneath
```

1    the bed, which is --

2             THE COURT:  How much money?

3             MR. BRYAN:  Your Honor, there was also --

4             THE COURT:  How much money?

5             MR. BRYAN:  Approximately $32,000 in cash underneath

6    the bed in a duffel bag.

7             Additionally, in an envelope that had the defendant's

8    name on it, there was a large sum of cash, a couple thousand

9    dollars that was found by the agents as well.

10            THE COURT:  Where was the envelope?

11            MR. BRYAN:  It was in one of the night tables.

12            THE COURT:  Which night table?

13            MR. VILA:  The evidence was in her purse when she was

14   stopped.

15            MR. BRYAN:  It was located in the dresser, Your Honor.

16            THE COURT:  Which dresser?

17            MR. BRYAN:  I believe there's only one in the

18   residence.  It's a large dresser that's across from the foot of

19   the bed.

20            THE COURT:  $2,000.  And the kilos of cocaine in this

21   case they're what?  How much?

22            MR. BRYAN:  The kilos of heroin that were found in the

23   stash house was eight kilograms of heroin.

24            THE COURT:  How much is that worth?

25            MR. BRYAN:  Usually heroin goes for about $85,000 up

1    to about 150 a kilo.

2              THE COURT:  So how much is that?

3              MR. BRYAN:  Times four, three million 200 on the low

4    end going all the way up to --

5              THE COURT:  A bunch of money?

6              MR. BRYAN:  A lot of money, yes, Your Honor.

7              THE COURT:  So having a thousand dollars in an

8    envelope is meaningless.  A lot of people have money and cash

9    in an envelope.  No?

10             MR. BRYAN:  Not together with the accouterments of

11   drug dealing in the same room, Your Honor.

12             We actually found cocaine in that room.  We found

13   rubberbands and we found plastic baggies, we found the scales,

14   we found additional cash, $32,000, under their bed.  Most folks

15   do not have $32,000 under their bed.  We found, again, the

16   wrapping, the green plastic wrapping that we found at each

17   location where we conducted our search with the exception of, I

18   believe, up at the Neal Munroe residence.

19             THE COURT:  I'm listening.

20             MR. BRYAN:  And we have in addition, the defendants

21   made out a number of --

22             THE COURT:  What do you mean the defendants?

23             MR. BRYAN:  I'm sorry.  Dulce Castellanos made out a

24   number of $6,000 United States Postal Service money orders made

25   payable to herself, which is clearly indicative of money

 1    laundering activity.

 2            THE COURT:  How about drug dealing?

 3            MR. BRYAN:  We have also the connection between

 4    herself, Dulce Castellanos, and in a video where she is

 5    together with Saul Wynter, Martin Castellanos, William

 6    Martinez.  They're all on vacation, so they obviously know one

 7    another.

 8            THE COURT:  I suspect most wives know their husbands.

 9    There's no question about that.

10            And Martinez, what's the relationship -- I mean, of

11    all evidence -- it was some beach place, wasn't it?

12            MR. BRYAN:  Yes, Your Honor.

13            THE COURT:  Was there any discussion of drugs?

14            MR. BRYAN:  Not in the video, no, Your Honor.

15            THE COURT:  It's a kind of meaningless video and

16    that's it.  It shows that Dulce Castellanos knows her husband,

17    Martin Castellanos.  You probably don't need a video for that.

18            And the relationship with William Martinez is what?

19            MR. BRYAN:  Again, there's drug trafficking.

20            THE COURT:  What's the relationship?  Is it a familial

21    relationship?

22            MR. BRYAN:  Mother-in-law, Your Honor.

23            THE COURT:  Mother-in-law.  I mean, I know the answer

24    to that question.  So, she knows her son-in-law?

25            MR. BRYAN:  Yes.

```
 1              THE COURT:  They vacation together?

 2              MR. BRYAN:  Yes.

 3              THE COURT:  And he's a drug dealer?

 4              MR. BRYAN:  Yes.

 5              THE COURT:  Is that sufficient evidence of her being a

 6    drug dealer?  That's really what it amounts to.

 7              MR. BRYAN:  Exactly.

 8              THE COURT:  But I'm concerned that it isn't.

 9              MR. BRYAN:  Your Honor, but again when you combine the

10    historical evidence of the drug trafficking activity of William

11    Martinez together with Martin Castellanos.

12              THE COURT:  You've got that.  No question about that.

13              MR. BRYAN:  Leading up to it, we have again the

14    seizure at the house where she has in her master bedroom, I

15    believe he said 38 grams of cocaine.

16              THE COURT:  In which dresser?  That's what I want to

17    know.  Tell me which dresser.

18              MR. BRYAN:  Your Honor, the night stands were never

19    identified as belonging to either Dulce Castellanos or Martin

20    Castellanos.  Again, they shared that master bedroom.

21              THE COURT:  What's in it?  Tell me what's in each

22    drawer.  Show me some pictures.

23              MR. BRYAN:  Your Honor, the green fanny pack was

24    located in the right night stand of the master bedroom.

25              THE COURT:  And what does that have?
```

1          MR. BRYAN:  That right night stand also had money

2  seized -- there was money seized from that right night stand.

3          THE COURT:  How much money?  We have the right night

4  stand?

5          MR. BRYAN:  Yes, Your Honor.

6          THE COURT:  Had what?  A fanny pack bag, you said?

7          MR. BRYAN:  Yes, a green fanny pack.

8          THE COURT:  And that had what?

9          MR. BRYAN:  That had the eyeglass case with the

10  cocaine in it, and had the packaging, the baggies, it had the

11  rubberbands, and there was also approximately, I think, $7,000

12  in that right night stand that was found.

13          THE COURT:  What else?  That's it?

14          MR. BRYAN:  $32,000 found underneath a bed.

15          THE COURT:  Was there anything else in the other night

16  stand?

17          MR. BRYAN:  I believe all of the items were found in

18  that right night stand, according to what --

19          THE COURT:  Tell me what other items?  What about this

20  belt?  Is there a male belt there?

21          MR. BRYAN:  Your Honor, there's a belt, there's a

22  large sum of cash inside the box for one of the digital scales.

23          THE COURT:  Say that again.

24          MR. BRYAN:  There's a belt, there's a box that was

25  originally for one of the digital scales, and I believe that

1    was the $7,000 cash.

2            THE COURT:  Is it a male belt?

3            MR. BRYAN:  It's difficult to see from this point,

4    Your Honor.  It may be.

5            THE COURT:  What was found in the other night stand?

6            MR. BRYAN:  Your Honor, we don't have any information

7    as to anything found in the left night stand.

8            MR. VILA:  Judge, I'm sure that if there would have

9    been something, they would have brought it out.

10           THE COURT:  If there would have been something

11   illegal, obviously.

12           MR. BRYAN:  Your Honor, there's also several keys

13   standing on top of this night stand which I don't know to what

14   they pertain.

15           However, the Government, Your Honor, would argue that

16   being within the master bedroom, obviously, both the defendant

17   and her husband had joint control and possession of the area of

18   the master bedroom.

19           Again, there was a very large sum of cash found

20   underneath the bed, which strains credibility that no one was

21   aware that $32,000 in cash in a duffel underneath the bed where

22   they both live and sleep, that they were both unaware of the

23   money being in the bedstand as well as the cocaine, as well as

24   the packaging material, as well as the scales being out.

25           THE COURT:  Okay.  Anything else?

1          MR. VILA:  Judge, just one case, U.S. vs. Newton,

2    where --

3          THE COURT:  U.S. vs. what?

4          MR. VILA:  Newton, 44 F.3d 913, 11th Circuit, where an

5    individual rented a house for a friend, and they used the house

6    for illegal activity, and the court held that was not

7    sufficient to hold that he was part of a conspiracy.

8          THE COURT:  Let's say in your closet, in your client's

9    closet there would a bag with money.  Would that be enough?

10   With lots of money, Mr. Vila?

11         MR. VILA:  In my client's closet, clearly her closet

12   or just a closet?

13         THE COURT:  The closet in the bedroom.

14         MR. VILA:  With both male and female clothing?

15         THE COURT:  Yes.  Say there's $300,000 just sitting

16   there.

17         MR. VILA:  Judge, I don't think that's enough.

18         THE COURT:  Well, let me give you a case, United

19   States vs. Molina, M-o-l-i-n-a, 443 F.3d 824, a case from 2006,

20   where the judge granted a judgment of acquittal and he was

21   reversed.  So I assume that was done after the jury found in

22   favor of the Government.  And the opinion by the 11th Circuit

23   says the following:

24         Although mere presence is insufficient to establish

25   knowing participation in a conspiracy, this appeal is not about

1    mere presence.  Agents discovered in Molina's closet a garbage

2    bag that contained the bulk of the nearly $300,000 seized from

3    Molina's residence.

4            Because a person who owns or exercises dominion and

5    control over a residence in which contraband is concealed may

6    be deemed to be in constructive possession of the contraband,

7    the large quantity of money in Molina's closet was the basis

8    for the jury to reasonably infer Molina's knowing participation

9    in the conspiracy.

10           And they cite, ironically, United States vs. High,

11   H-i-g-h, 117 F.3d 464, an 11th Circuit case from 1997, stating

12   that a defendant involved only in the money laundering facet of

13   the drug business could be considered a part of the conspiracy

14   to distribute those drugs.  Citing the Bolinger decision from

15   1986, B-o-l-i-n-g-e-r.

16           In the Molina case the Government presented evidence

17   of the drugs and digital scale in plain view in Molina's

18   bedroom.  The drugs and digital scale with cocaine residue

19   hidden in the bathroom hamper, the firearm and the passports of

20   Molina and her brother in the open drawer of the night stand,

21   and Molina's statement that a family member and co-conspirator

22   asked her to store the shoe box of a bundle of U.S. currency.

23           The 11th Circuit said that's enough and reversed the

24   District Judge who granted the judgment of acquittal.

25           MR. VILA:  Judge, didn't Molina share the room with

1   someone else?

2           THE COURT:  No.  So the only difference is that the

3   bedroom is shared with someone else.  That's the only

4   distinction.

5           MR. VILA:  And there's nothing in open view.  There's

6   a bag --

7           THE COURT:  The scales are in open view?

8           MR. VILA:  No.

9           THE COURT:  Where are the scales?  This is a bedroom.

10          MR. VILA:  The scales and everything is inside of a

11  pouch that's closed that's inside of a drawer of a night table

12  that's also closed.

13          THE COURT:  But, see, the problem is unlike Molina,

14  your client also is seen carrying bags full of money.  Every

15  case is different.  And I think it's not a strong case for the

16  drug conspiracy.  And, obviously, if it didn't happen in her

17  own bedroom, if it was in someone else's bedroom.

18          So I'm going to deny.  You can always make it again at

19  the end of your case, understanding the difficult decision that

20  you have to make and your client has to make in order to

21  preserve the motion for judgment of acquittal now.

22          But on the money laundering, I think it's sufficient.

23  And I have no problems denying a motion for judgment of

24  acquittal on Counts 4 and 6.  I'm more reluctant on Count 1,

25  but I'm going to deny it.

1          Mr. Flynn, what do you want to say?

2          MR. FLYNN:  Your Honor, I wish to move for a Rule 29

3    on a basis that the Court probably hasn't heard very often, and

4    that is that in a sense there's too much evidence.  And let me

5    explain what I mean.

6          THE COURT:  I have not heard that from a defense.

7    Today is that kind of a day.

8          MR. FLYNN:  And what I mean by that is the Supreme

9    Court decision in Kotteakas.  In this case the Government has

10   presented to the Court and the jury evidence of numerous

11   conspiracies, not the one large conspiracy that they have

12   alleged.  And at the very least, the Government has

13   demonstrated a conspiracy between the defendant and the group

14   of Dominican informants that testified here.

15          And then the Government has presented proof of a

16   totally separate conspiracy involving Mr. Wynter and Mr. James

17   and Mr. James' henchmen.  These are two totally separate

18   conspiracies which, as in Kotteakas, assuming all the testimony

19   to be true as the Court has to assume at this point, Mr. Wynter

20   as the hub, these as the spokes, and there is no connection

21   between the spokes.

22          THE COURT:  Well, there is connection between him and

23   James.

24          MR. FLYNN:  Oh, yes.

25          THE COURT:  You agree?

```
 1                MR. FLYNN:  Agree.

 2                THE COURT:  You're saying it's a separate conspiracy?

 3                MR. FLYNN:  Correct.

 4                THE COURT:  What do you say to that, Mr. Bryan?

 5                MR. BRYAN:  Your Honor, several members of the

 6   conspiracy worked with each other, and there is one central

 7   figure that is common to each group of persons working

 8   together, and that is Saul Wynter.

 9                THE COURT:  But which conspiracy are we talking about?

10   Are we talking about the conspiracy that was tried by Judge

11   Huck?  Wasn't he the one who tried James?

12                MR. BRYAN:  He did, Your Honor.

13                THE COURT:  And who was involved in that conspiracy?

14                MR. BRYAN:  Saul Wynter, Gregory James, Kenneth Head,

15   Osvaldo Ortega.

16                THE COURT:  The same people as here.  So it's the same

17   conspiracy?

18                MR. BRYAN:  Yes, Judge.

19                THE COURT:  Why wasn't Saul Wynter indicted in that

20   case?

21                MR. BRYAN:  Your Honor, I honestly do not know.

22                THE COURT:  You have absolutely no pull with the U.S.

23   Attorney's Office if you were in charge of that one.

24                But you were saying that it's the same conspiracy that

25   was tried before Judge Huck?
```

1          MR. BRYAN:  It is part of the same conspiracy, yes,

2    Your Honor.

3          THE COURT:  Which means if this defendant is acquitted

4    of this conspiracy, you waive any right to indict him on any

5    other drug conspiracy, true?

6          MR. BRYAN:  Yes.  We can recognize that, Your Honor.

7          THE COURT:  That takes care of that.  It's only one

8    conspiracy.

9          MR. FLYNN:  They can't waive the defendant's

10   constitutional right to demand proof of the single conspiracy.

11         THE COURT:  You've got proof.  James said, Head said

12   it, among others during the same period.  Just because you

13   don't know every member of a conspiracy doesn't mean that

14   you're not part of it.

15         MR. FLYNN:  That's true.  But it has to be the same

16   conspiracy.  So, for example, if Mr. Wynter had not known

17   Mr. Head, let us say, that would be irrelevant, because --

18         THE COURT:  Well, what's the evidence that it is a

19   different conspiracy?

20         MR. FLYNN:  Because you have Mr. Wynter allegedly

21   supplying cocaine to another completely independent group of

22   people.

23         THE COURT:  Who was that in here?

24         MR. FLYNN:  That is Mr. Herrera, Mr. Santana and that

25   entire crew of people.

1          THE COURT:  What do you say about that Herrera and

2    Santana?

3          MR. BRYAN:  Your Honor, again, those individuals

4    worked for Saul Wynter.  They obtained cocaine and heroine for

5    Mr. Wynter to supply to him.

6          And, Your Honor, I think Kenneth Head said it best.

7    These groups when they operate they do not operate simply as

8    oh, I'm just a distributor, or, oh, I'm just a supplier, or I'm

9    either of those two things.  It is sort of an amorphous concept

10   whereas the defendant, his intent is to have cocaine to be able

11   to sell it to customers when they come.  And sometimes that

12   means if one supplier does not have it, he has to go to another

13   supplier to get it.  And if that supplier doesn't have it, he

14   will have to go to another person.

15         THE COURT:  There are no exclusive contracts in this

16   business.

17         MR. BRYAN:  Exactly.  There are no exclusive

18   contracts.

19         MR. FLYNN:  Here's the simple answer:  Could under

20   this -- under the evidence in this case, could Mr. Herrera or

21   Mr. Santana be convicted of being a co-conspirator with

22   Mr. James and Mr. Head?  The answer is no, because there is no

23   rim to the wheel.

24         THE COURT:  Well, I don't know because I don't know

25   how much evidence there would be against them.  The evidence

1 for purposes of admitting their statement doesn't have to be as

2 high as it is for conviction.  And I already admitted the

3 statements of all those individuals.  And some of them

4 testified, in any event, and were subject to cross examination.

5       But I understand your argument, and you can, of

6 course, argue that to the jury.  But I'm going to deny the

7 motion for judgment of acquittal.

8       Anything else?

9       MR. FLYNN:  And plus my argument would further be as

10 to the substantive counts is that if there are multiple

11 conspiracies as to Count 1, not the one conspiracy charged in

12 the indictment, then those counts must fall because as to the

13 substantive counts, the only theory that the Government could

14 possibly have in this case is a conspiracy theory.

15       THE COURT:  Run that by me again.

16       Count 2, January 23rd possession.  What is that

17 possession?

18       MR. BRYAN:  Your Honor, the Government is relying on

19 the United States vs. Pinkerton decision as to the substantive

20 counts as to the defendant Saul Wynter.

21       THE COURT:  Which means what?  You want me to give a

22 so-called Pinkerton?

23       MR. BRYAN:  Instruction, yes, Your Honor.

24       I know Your Honor is not very fond of that decision.

25       THE COURT:  No, no.  That was, you know, a lot of them

1   was that Albert decision that I already spoke about which I

2   denied, I think it was that case.  Yes, I denied severance.

3   And they talked about Pinkerton.

4           But without Pinkerton, what do you have?  What's the

5   evidence of possession with intent to distribute five kilograms

6   of coke as charged in Count 2?

7           MR. BRYAN:  That is, Your Honor, that the law

8   enforcement officers conducted the search of Neal Munroe's

9   residence.

10          THE COURT:  And the residence is which residence is

11  that?  Give me the address.

12          MR. BRYAN:  It is located at -- it's the 3800 block of

13  Northwest 70 Avenue in Davie, Florida.

14          THE COURT:  And what was found there?

15          MR. BRYAN:  Your Honor, we found wrappings for

16  approximately six kilograms of cocaine that had residue still

17  on them that were in the tub at that location.

18          THE COURT:  And for Count 3, where is the evidence of

19  the March 15 one kilogram of heroin?

20          MR. BRYAN:  That is the 11720 Southwest 24th Street in

21  Miramar, Florida, which we refer to as the stash house, Your

22  Honor.

23          THE COURT:  And what was found there?

24          MR. BRYAN:  We found approximately eight kilograms of

25  heroin stuffed in the vents in the downstairs bedroom.

1      MR. FLYNN:  If Your Honor will recall, there was

2  surveillance in both of these incidents that Mr. Wynter was not

3  seen.  There's no proof that he was even in this country at

4  either of those times.

5      THE COURT:  And how does Pinkerton apply in this case?

6      MR. BRYAN:  Your Honor, if the defendants --

7      THE COURT:  That applies to the substantive counts as

8  well as the conspiracy, or what?

9      MR. BRYAN:  Your Honor, if the defendants are found

10  guilty or found to have conspired to possess with intent to

11  distribute a controlled substance during the course of the

12  conspiracy, then Pinkerton holds those defendants liable for

13  the acts of co-conspirators that are conducted during the

14  course of the conspiracy as charged in the indictment.

15      THE COURT:  Anything else you want to say regarding

16  the Pinkerton co-conspirator --

17      MR. FLYNN:  Your Honor, there is no evidence in this

18  case that Mr. Wynter was even seen.

19      THE COURT:  You've got the co-conspirator saying he

20  was the one who supplied the drugs.

21      MR. FLYNN:  No, not these drugs.  There's no evidence

22  after 2003 or early 2004.

23      THE COURT:  What say you to that, Mr. Bryan?

24      MR. FLYNN:  In fact, Your Honor, when it comes down to

25  it, when each of the co-conspirators was finally arrested, the

1   source of the drugs ended up not being Mr. Wynter.

2           MR. BRYAN:  Your Honor, we would argue that the money

3   laundering activity that continued in 2007 was indicative of

4   the continuing drug trafficking conspiracy.

5           We have all the way through October of 2007 where

6   there are large unexplained bundles of cash that were found in

7   Dulce Castellanos' and Nordis Martinez' residence.  There was

8   14 or $13,000 underneath a cushion inside the bed.

9           At that time Martin Castellanos had disappeared,

10  William Martinez had disappeared and all of that coincidentally

11  right after the law enforcement officers conducted a search of

12  the residence where Martin Castellanos was present during the,

13  and knew of the search of both his residence where they found

14  cocaine and of the storage location where they found the

15  heroin.  He was released and thereafter he was no longer able

16  to be located nor was William Martinez and, of course, Saul

17  Wynter was nowhere to be found as well.

18          However, we do find that there again is a large

19  unexplained amount of cash that's found at the residence of

20  Dulce Castellanos and Nordis Martinez approximately six months

21  after Martin Castellanos is released.

22          THE COURT:  What does that prove?

23          MR. BRYAN:  That both Martin Castellanos and William

24  Martinez were in a continuing conspiracy with Saul Wynter up

25  until at least 2004.  That is where we have direct testimony

1    from witnesses.

2            THE COURT:  2004?

3            MR. BRYAN:  Yes, Your Honor.

4            THE COURT:  The possession of cocaine and the

5    possession of heroin is January 23rd, 2007.

6            MR. BRYAN:  And we have William Martinez participating

7    in that event who we have already established was a

8    co-conspirator with Saul Wynter at least as far back as 2004.

9            We find William Martinez again at that stash house

10   location with the bag, bringing it in, and then we conduct the

11   search and find the heroin.

12           Your Honor, we would argue that once that conspiracy

13   has been established and we find the co-conspirator continuing

14   to conduct unlawful activity, that the defendant should be held

15   liable for that.

16           MR. FLYNN:  If we accept that, Your Honor, then

17   Mr. Wynter's liability never ends.  If Mr. Martinez is doing

18   something right now, or if these illustrious Government

19   witnesses when they get out of prison and go back into the

20   business, if you accept that logic, then Mr. Wynter is

21   responsible.

22           MR. BRYAN:  Mr. Wynter was not apprehended at that

23   point, Your Honor, so he could not withdraw or discontinue his

24   drug trafficking activities.  He was still at large, Your

25   Honor.

 1          MR. FLYNN:  But he's only responsible for what things

 2   occurred in the scope of his conspiracy with William Martinez

 3   or anyone else.  He's not responsible for what William Martinez

 4   does three years later unless the Government has proved that

 5   there's a connection.

 6          THE COURT:  It depends on whether there's a conspiracy

 7   or not that lasts that long.  That's what the trial is all

 8   about.

 9          Did it stop at some period of time, and you're saying

10   it did stop or it never existed in the first place?  What is

11   it?

12          MR. FLYNN:  I'm saying, in essence, both.  If they can

13   prove the one large conspiracy.  But any of the smaller

14   conspiracies seized as far as the evidence demonstrates was in

15   2004, at the very latest.

16          MR. BRYAN:  Your Honor, we still have drug trafficking

17   activities in 2007 between William Martinez and Martin

18   Castellanos at that point, March 2007.

19          THE COURT:  And directly linked with Wynter after 2004

20   is what?

21          MR. BRYAN:  Again, we do not have direct testimony to

22   that effect.  We don't have a direct observation of Saul Wynter

23   with Mr. Wynter at that point.

24          Your Honor, the most recent evidence of collaboration

25   between William Martinez and Saul Wynter would be demonstrated

1  through the money transfer records from Western Union where in

2  February of 2005 Saul Wynter and William Martinez sent from the

3  same store, roughly a minute after one another, money from

4  Miami to Panama to the same individual in the amounts of --

5          THE COURT:  Did I admit that evidence?

6          MR. BRYAN:  You did, Your Honor.

7          THE COURT:  How much?

8          MR. BRYAN:  A thousand dollars was sent by William

9  Martinez and $700 by Saul Wynter.

10         THE COURT:  And that proves that they're involved in a

11 multi-kilo heroin million dollar --

12         MR. BRYAN:  The reason we say yes --

13         THE COURT:  A thousand dollars?  I mean, you could

14 find half of the citizens of Dade County doing that who are

15 hard-working housekeepers and gardeners and that kind of thing.

16         MR. BRYAN:  That do not have the circumstantial

17 evidence behind them of drug trafficking as these individuals

18 do.

19         THE COURT:  But what happens between '05 and '07?

20 That's a two-year gap.

21         MR. BRYAN:  Again, the circumstantial evidence that

22 the two co-conspirators of Saul Wynter, William Martinez and

23 Martin Castellanos are still active.

24         THE COURT:  Three.  You said two.

25         MR. BRYAN:  Yes, three.

1        THE COURT:  What is the evidence that Saul Wynter is

2   doing what after 2005?

3        MR. BRYAN:  Again, the activity observed as to his

4   co-defendants, William Martinez and Martin Castellanos, during

5   that time period.

6        THE COURT:  They're drug dealing?

7        MR. BRYAN:  They are, Your Honor.  We found drugs in

8   their stash house and in their house.

9        THE COURT:  Unfortunately, they're not here, but I can

10  dispose of the Rule 29 motions a lot more quickly.  Your case

11  is stronger against Martin Castellanos and Martinez, right?

12       MR. BRYAN:  During that time period, yes, Your Honor.

13       THE COURT:  And during which period is it stronger

14  against Wynter?

15       MR. BRYAN:  Beginning 1998 through 2005 we would

16  argue.

17       THE COURT:  But the substantive offenses are 2007.

18       MR. BRYAN:  Yes, Your Honor, under the Pinkerton

19  theory.

20       THE COURT:  Again, under the Pinkerton theory?

21       MR. BRYAN:  Agreed, Your Honor.

22       THE COURT:  And what does Pinkerton say?

23       MR. BRYAN:  Your Honor, the Pinkerton case holds that

24  each party to a continuing conspiracy may be vicariously liable

25  for substantive offenses committed by a co-conspirator during

1   the course and in furtherance of a conspiracy notwithstanding

2   that the parties' non-participation in the offenses or lack of

3   knowledge thereof.  And that's U.S. vs. Pinkerton, 328 U.S.

4   640.

5         THE COURT:  And that was in what year?

6         MR. BRYAN:  1946, and several cases cited after it for

7   the same proposition.

8         THE COURT:  There's a bunch of cases cited.  Actually,

9   what happened is that the Pinkerton theory was that a

10  co-conspirator liability was expanded in that Alvarez case.

11  That was that murder case that I mentioned before dealing with

12  severance, the murder-drug dealing case.

13        There's a case called United States vs. Mother Sill,

14  87 F.3d 1214, 1996, S-i-l-l, and it says the following:

15        Generally, Pinkerton co-conspirator liability applies

16  in two situations:  First, where the substantive crime is also

17  a goal of the conspiracy.  For example, where there is a

18  narcotics conspiracy and a corresponding substantive crime of

19  possession or distribution of cocaine.

20        The second scenario is where the substantive offense

21  differs from the precise nature of the ongoing conspiracy, but

22  facilitates the implementation of its goals.  For example, a

23  particular co-conspirator found guilty of conspiring to

24  distribute drugs may also be held liable for the substantive

25  crime of possession of a firearm.

1           In Alvarez, this Circuit expanded the breadth of

2     Pinkerton liability to include reasonably foreseeable but

3     originally unintended substantive crimes.   In other words,

4     embracing substantive crimes occurring as a result of an

5     unintended turn of events.

6           Despite the fact that murder was not within the

7     originally intended scope of the conspiracy in that case, the

8     Alvarez court found individual culpability of the defendants

9     sufficient to support their murder convictions pursuant to the

10    Pinkerton co-conspirator doctrine.

11          The extension of co-conspirator liability to

12    reasonably foreseeable but originally unintended substantive

13    crimes must be limited by due process.   As Alvarez's holding is

14    limited to conspirators who played more than a minor role in

15    the conspiracy or who had actual knowledge of at least some of

16    the circumstances and events culminating in their reasonably

17    but unintended substantive crimes.   Alvarez, as I mentioned

18    before, at 755 F.2d.

19          Here we're really not talking about foreseeability

20    because it's the same type of crime, drug dealing and money

21    laundering.

22          My concern is one of the timing, Mr. Bryan.   That's

23    what my concern is.   Not the applicability of Pinkerton.   It's

24    easy to apply it in Alvarez where the issue was a bunch of drug

25    dealers are drug dealing and an agent gets killed.   No one

1   really intended for the undercover agent to get killed.  Thus,

2   is that foreseeable or not?  And everything happened rather

3   quickly.

4          Here you're talking about a substantive offense of

5   drug possession that occurred two years after '05, and the

6   defense would argue even three years after the '04.  That's a

7   big time gap for the Pinkerton liability to continue without

8   any direct evidence, isn't it?

9          MR. BRYAN:  Agreed, Your Honor.

10          THE COURT:  And do you have a case that talks about

11   such a big gap?

12          MR. BRYAN:  I do not at this point, Your Honor.

13          THE COURT:  So this is going to be the first case

14   that's going to go up to the 11th Circuit, obviously.

15          MR. BRYAN:  If the Court would allow us, we would

16   certainly like to take a look at some of the case law.

17          THE COURT:  You are going to have to.  I'm going to

18   deny the motion for a judgment of acquittal at this stage.  But

19   I'm concerned about -- not about the conspiracy, Count 1.  I'm

20   going to deny it as to that.

21          I'm concerned about the possession with intent to

22   distribute under the Pinkerton theories of the January 23rd,

23   '07 and the March 15th, '07 because of the gap.  There appears

24   to be a gap.  There's something that has to be said.

25          It's not unreasonable to expect that drug dealers are

1   going to do their own thing after someone is out of the

2   picture.  The question is, you're saying Wynter was still in

3   the picture as the evidence of that is just the flow of money.

4           MR. BRYAN:  The circumstances again with -- yes, as

5   Your Honor had mentioned the fact that we still have William

6   and --

7           THE COURT:  Drug dealing?

8           MR. BRYAN:  Yes, drug dealing.

9           THE COURT:  But if Wynter had been arrested in '05 and

10  Martinez and Castellanos would have been drug dealing, and then

11  what would be your argument?

12          MR. BRYAN:  We would be in a different situation, I

13  believe, Your Honor.

14          THE COURT:  There's no question about that because you

15  would have no evidence.

16          MR. BRYAN:  Yes, Your Honor.

17          THE COURT:  But you still have to prove, do you not,

18  that he's still drug dealing as late as that.  Not the

19  conspiracy.  The conspiracy started in '95.

20          This is what happens when you have conspiracies that

21  go for twelve years.

22          Of course, Mr. Flynn, this is what happens when you

23  have witnesses who say they have been supplying drugs for all

24  this time.

25          MR. BRYAN:  Your Honor, we do have one other link,

1  that is the Mercury Sable that was alluded to by the

2  defendant -- I'm sorry, the witness.

3          THE COURT:  He's probably a defendant, too.

4          Which one?

5          MR. BRYAN:  Natividad Espino.

6          THE COURT:  He kind of wasn't a defendant.

7          MR. BRYAN:  He had mentioned a Mercury Sable, a silver

8  Mercury Sable, that what he had driven many times to New York

9  and also to Louisiana.  We also --

10         THE COURT:  Sometimes with nothing in it?

11         MR. BRYAN:  Yes, that's true.

12         THE COURT:  So now we have proof of a conspiracy, the

13 fact that you drive a Sable with nothing in it?

14         MR. BRYAN:  No, Your Honor.  We have several money

15 drops or pickups that he conducted in that automobile, and we

16 also have that same automobile located at the Miami Gardens

17 residence, which is the home residence --

18         THE COURT:  Which money laundering conspiracy is

19 Wynter charged with?

20         MR. BRYAN:  Neither, Your Honor.

21         THE COURT:  So it's only drugs.

22         MR. BRYAN:  Yes, Your Honor.  It's in furtherance of

23 his drug trafficking activity which the witness --

24         THE COURT:  What's in furtherance?  Driving an empty

25 car?

1        MR. BRYAN:  No, driving the car with money.  He

2  indicated sometimes he'd take money, sometimes he'd take drugs.

3        THE COURT:  How much money did he say?

4        MR. BRYAN:  He did not know the amounts.  He was just

5  given the keys and told to drive.

6        THE COURT:  One time he didn't get paid and another

7  time he got paid three grand?

8        MR. BRYAN:  Yes, Your Honor, three grand, five grand,

9  a thousand five hundred.  It all depends.

10        THE COURT:  I'm going to deny the motion for judgment

11  of acquittal, and I'm sure you will raise it again at the end

12  of the defense case.

13        MR. FLYNN:  Yes, Your Honor.

14        THE COURT:  Okay.  Are we ready to proceed?

15        MR. FLYNN:  We have outside the attorney, Fred

16  Robbins.

17     *          *          *          *          *          *

18                    C E R T I F I C A T E

19        I hereby certify that the foregoing is an accurate

20  transcription of proceedings in the above-entitled matter.

21

                         s/Larry Herr

22  _____    _____

        DATE            LARRY HERR, RPR-CM-RMR-FCRSC

23                      Official United States Court Reporter

                        400 N. Miami Avenue

24                      Miami, FL  33128 - 305/523-5290

                                   (Fax) 305/523-5639

25                      email:  Lindsay165@aol.com

**A**

**able** 27:10 31:15
**about** 13:17,18,20
  15:25 16:1 17:2,9
  18:12 19:19 21:25
  25:9,10 27:1 29:1
  29:3 33:8 37:10
  38:4,10,19,19,21
  39:14
**above-entitled** 41:20
**absolutely** 3:13 5:18
  6:3 25:22
**accept** 32:16,20
**according** 19:18
**account** 6:7,19
**accouterments**
  16:10
**accurate** 41:19
**acquittal** 3:5 5:22
  21:20 22:24 23:21
  23:24 28:7 38:18
  41:11
**acquitted** 26:3
**across** 15:18
**active** 34:23
**activities** 32:24
  33:17
**activity** 6:5 8:24
  12:9 17:1 18:10
  21:6 31:3 32:14
  35:3 40:23
**acts** 30:13
**actual** 37:15
**actually** 7:6 11:13
  14:7 16:12 36:8
**addition** 13:24 16:20
**additional** 16:14
**Additionally** 15:7
**address** 29:11
**admit** 34:5
**admitted** 28:2
**admitting** 28:1
**affect** 11:19
**after** 9:19,23 21:21
  30:22 31:11,21
  33:19 34:3 35:2
  36:6 38:5,6 39:1
**again** 5:25 9:5 10:2
  12:11 16:15 17:19
  18:9,13,20 19:23
  20:19 23:18 27:3
  28:15 31:18 32:9
  33:21 34:21 35:3
  35:20 39:4 41:11
**against** 5:12 27:25
  35:11,14
**agent** 37:25 38:1
**agents** 12:13 15:9
  22:1
**agree** 24:25 25:1
**agreed** 3:14 5:19
  35:21 38:9
**ahead** 10:18
**Albert** 29:1

**alleged** 24:12
**allegedly** 26:20
**allow** 38:15
**alluded** 40:1
**already** 28:2 29:1
  32:7
**Although** 21:24
**Alvarez** 2:6 36:10
  37:1,8,17,24
**Alvarez's** 37:13
**always** 23:18
**AMERICA** 1:4
**among** 26:12
**amorphous** 27:9
**amount** 31:19
**amounts** 18:6 34:4
  41:4
**ANDRES** 1:7
**another** 11:24 12:23
  17:7 26:21 27:12
  27:14 34:3 41:6
**answer** 17:23 27:19
  27:22
**anyone** 3:14,14 5:4
  33:3
**anything** 19:15 20:7
  20:25 28:8 30:15
**apartment** 9:24
**appeal** 21:25
**APPEARANCES**
  1:13
**appears** 38:23
**applicability** 37:23
**applications** 8:9,10
**applies** 30:7 36:15
**apply** 30:5 37:24
**apprehended** 32:22
**approximately** 10:1
  10:8 15:5 19:11
  29:16,24 31:20
**area** 20:17
**argue** 10:19 20:15
  28:6 31:2 32:12
  35:16 38:6
**argument** 10:23
  28:5,9 39:11
**ARGUMENTS** 1:11
**arrested** 30:25 39:9
**asked** 22:22
**assigned** 13:12
**Assistant** 1:15
**associated** 14:13
**association** 5:4
**assume** 6:20 9:8
  21:21 24:19
**assumed** 12:18
**assuming** 24:18
**attorney** 41:15
**Attorneys** 1:15
**Attorney's** 1:15
**automobile** 40:15,16
**Avenue** 1:17,21,24
  29:13 41:23
**aware** 14:4 20:21

**away** 12:5

**B**

**back** 32:8,19
**bag** 9:24 12:22 15:6
  19:6 21:9 22:2
  23:6 32:10
**baggies** 16:13 19:10
**bags** 10:8,13,14,16
  11:14 12:15 23:14
**bank** 6:7,22 11:22
  11:23 12:1
**barber** 7:25
**basin** 14:21
**basis** 22:7 24:3
**bathroom** 22:19
**Bay** 1:19
**beach** 17:11
**become** 3:15
**bed** 15:1,6,19 16:14
  16:15 19:14 20:20
  20:21 31:8
**bedroom** 3:22,23,25
  4:2,3,6,14,22
  14:16 18:14,20,24
  20:16,18 21:13
  22:18 23:3,9,17,17
  29:25
**bedstand** 20:23
**before** 1:11 25:25
  36:11 37:18
**began** 12:23
**beginning** 9:5 35:15
**behind** 34:17
**being** 10:25 12:11
  14:5 18:5 20:16,23
  20:24 27:21 31:1
**believe** 14:2 15:17
  16:18 18:15 19:17
  19:25 39:13
**belonged** 5:2
**belonging** 4:22 5:11
  7:2 18:19
**belongs** 4:19
**belt** 4:25 19:20,20,21
  19:24 20:2
**best** 27:6
**between** 8:23 9:2,9,9
  9:17 10:3 17:3
  24:13,21,22 33:17
  33:25 34:19
**big** 38:7,11
**biggest** 8:4,5,18
**bit** 9:6 13:15
**block** 29:12
**Bolinger** 2:7 22:14
**both** 20:16,22,22
  21:14 30:2 31:13
  31:23 33:12
**box** 19:22,24 22:22
**breadth** 37:1
**Brickell** 1:17,19,21
**bring** 11:25
**bringing** 12:15,16

**32:10
**brother** 22:20
**brought** 20:9
**Bryan** 1:14 7:5,6
  8:25 9:4,16,19,22
  10:6 12:7 13:19,21
  13:24 14:2,10,14
  14:16,18,22,25
  15:3,5,11,15,17,22
  15:25 16:3,6,10,20
  16:23 17:3,12,14
  17:19,22,25 18:2,4
  18:7,9,13,18,23
  19:1,5,7,9,14,17
  19:21,24 20:3,6,12
  25:4,5,12,14,18,21
  26:1,6 27:3,17
  28:18,23 29:7,12
  29:15,20,24 30:6,9
  30:23 31:2,23 32:3
  32:6,22 33:16,21
  34:6,8,12,16,21,25
  35:3,7,12,15,18,21
  35:23 36:6 37:22
  38:9,12,15 39:4,8
  39:12,16,25 40:5,7
  40:11,14,20,22
  41:1,4,8
**bulk** 22:2
**bunch** 6:24,25 7:8
  16:5 36:8 37:24
**bundle** 22:22
**bundles** 31:6
**business** 8:7,8,13
  22:13 27:16 32:20
**B-o-l-i-n-g-e-r** 22:15

**C**

**C** 41:18,18
**cafeteria** 7:24
**called** 36:13
**came** 6:4,4
**car** 13:5,16 40:25
  41:1
**care** 26:7
**carried** 10:25
**carrying** 11:14
  12:15 23:14
**case** 1:3 5:12 12:7,11
  12:21 13:3,10,17
  15:21 19:9 21:1,18
  21:19 22:11,16
  23:15,15,19 24:9
  25:20 27:20 28:14
  29:2 30:5,18 35:10
  35:23 36:10,11,12
  36:13 37:7 38:10
  38:13,16 41:12
**cases** 5:3 36:6,8
**cash** 6:3,3 7:17,22
  7:23 8:3,20,23
  10:9,23,23,25
  12:15,18,19,20,22
  13:4 15:5,8 16:8

**16:14 19:22 20:1
  20:19,21 31:6,19
**Castellanos** 1:8,21
  3:11,13 4:4,5,7,17
  4:18,20,22 5:2,11
  5:13,16,24 6:8,13
  6:14 7:2,15 9:3,10
  9:15 11:4 16:23
  17:4,5,16,17 18:11
  18:19,20 31:7,9,12
  31:20,21,23 33:18
  34:23 35:4,11
  39:10
**central** 25:6
**certainly** 38:16
**Certificate** 2:3
**Certified** 1:24
**certify** 41:19
**charge** 25:23
**charged** 3:11 28:11
  29:6 30:14 40:19
**chart** 6:2
**checks** 8:2 14:3,3,7,8
**Circuit** 2:9 21:4,22
  22:11,23 37:1
  38:14
**circumstances** 12:11
  37:16 39:4
**circumstantial** 14:10
  34:16,21
**circumstantially**
  8:19
**CITATIONS** 2:5
**cite** 22:10
**cited** 36:6,8
**Citing** 22:14
**citizens** 34:14
**city** 13:11
**clear** 13:22
**clearly** 16:25 21:11
**client** 23:14,20
**clients** 8:2,2,3,9
**client's** 4:6 21:8,11
**closed** 23:11,12
**closet** 21:8,9,11,11
  21:12,13 22:1,7
**clothing** 21:14
**cocaine** 3:12 9:22
  15:20 16:12 18:15
  19:10 20:23 22:18
  26:21 27:4,10
  29:16 31:14 32:4
  36:19
**coincidentally** 31:10
**coke** 29:6
**collaboration** 33:24
**combine** 18:9
**combined** 14:11
**come** 9:25 27:11
**comes** 30:24
**coming** 6:17
**commerce** 11:19
  12:3,3,6
**committed** 35:25

**common** 25:7
**completely** 26:21
**concealed** 22:5
**concede** 5:6 9:9,11
  9:11,13
**concept** 27:9
**concern** 37:22,23
**concerned** 18:8
  38:19,21
**conduct** 32:10,14
**conducted** 16:17
  29:8 30:13 31:11
  40:15
**connection** 17:3
  24:20,22 33:5
**considered** 22:13
**conspiracies** 24:11
  24:18 28:11 33:14
  39:20
**conspiracy** 3:11,15
  5:5,20,23 8:21 9:5
  9:9 10:3 13:18
  14:9 21:7,25 22:9
  22:13 23:16 24:11
  24:13,16 25:2,6,9
  25:10,13,17,24
  26:1,4,5,8,10,13
  26:16,19 28:11,14
  30:8,12,14 31:4,24
  32:12 33:2,6,13
  35:24 36:1,17,18
  36:21 37:7,15
  38:19 39:19,19
  40:12,18
**conspirators** 37:14
**conspired** 30:10
**conspiring** 36:23
**constitute** 13:7
**constitutional** 26:10
**constructive** 22:6
**contained** 22:2
**containing** 10:8
**content** 10:16
**CONTENTS** 2:1
**continue** 38:7
**continued** 31:3
**continuing** 31:4,24
  32:13 35:24
**contraband** 31:4,24
**contracts** 27:15,18
**control** 20:17 22:5
**controlled** 30:11
**conversations** 3:17
**convicted** 27:21
**conviction** 5:4 28:2
**convictions** 37:9
**Correct** 25:3
**corresponding** 36:18
**count** 3:7,10 5:22,23
  5:24 10:17,20,20
  10:21,22 23:24
  28:11,16 29:6,18
  38:19
**country** 11:25 30:3

**counts** 3:5,5,5 23:24
  28:10,12,13,20
  30:7
**County** 34:14
**couple** 15:8
**course** 3:9 9:14 28:6
  30:11,14 31:16
  36:1 39:22
**court** 1:1,23 3:2,9,21
  3:25 4:3,6,8,10,12
  4:14,16,18,21 5:6
  5:9,12 6:10,12,15
  6:18,21 7:1,4,8,11
  7:17,22,24 8:4,7
  8:12,16,19,25 9:8
  9:14,17,21 10:3,10
  10:14,20,25 11:3,5
  11:7,10,16,21,25
  12:6,24 13:2,10,20
  13:23 14:1,8,12,15
  14:17,20,24 15:2,4
  15:10,12,16,20,24
  16:2,5,7,19,22
  17:2,8,13,15,20,23
  18:1,3,5,8,12,16
  18:21,25 19:3,6,8
  19:13,15,19,23
  20:2,5,10,25 21:3
  21:6,8,13,15,18
  23:2,7,9,13 24:3,6
  24:9,10,19,22,25
  25:2,4,9,13,16,19
  25:22 26:3,7,11,18
  26:23 27:1,15,24
  28:15,21,25 29:10
  29:14,18,23 30:5,7
  30:15,19,23 31:22
  32:2,4 33:6,19
  34:5,7,10,13,19,24
  35:1,6,9,13,17,20
  35:22 36:5,8 37:8
  38:10,13,15,17
  39:7,9,14,17 40:3
  40:6,10,12,18,21
  40:24 41:3,6,10,14
  41:23
**Court's** 3:6
**co-conspirator** 22:21
  27:21 30:16,19
  32:8,13 35:25
  36:10,15,23 37:10
  37:11
**co-conspirators** 8:20
  30:13,25 34:22
**co-defendants** 35:4
**credibility** 20:20
**crew** 26:25
**crime** 10:24 34:16
  36:18,25 37:20
**crimes** 37:3,4,13,17
**Criminal** 3:4
**cross** 28:4
**culminating** 37:16
**culpability** 37:8

**currency** 22:22
**cushion** 31:8
**customers** 11:11
  27:11

**D**

**Dade** 34:14
**DATE** 41:22
**Davie** 29:13
**day** 1:9 24:7
**dealer** 18:3,6
**dealers** 37:25 38:25
**dealing** 7:14 11:8
  16:11 17:2 35:6
  36:11,12 37:20,25
  39:7,8,10,18
**deals** 10:17
**decision** 22:14 23:19
  24:9 28:19,24 29:1
**deemed** 22:6
**defendant** 1:17,21
  9:11 10:7 12:10
  13:19,24 20:16
  22:12 24:13 26:3
  27:10 28:20 32:14
  40:2,3,6
**defendants** 1:9
  16:20,22 30:6,9,12
  37:8
**defendant's** 12:14
  13:4,21 15:7 26:9
**defender** 13:12
**defense** 3:2 9:9 24:6
  38:6 41:12
**deliver** 6:21 13:6
**deliveries** 5:17
**delivering** 5:18
  12:20 13:1
**demand** 26:10
**demonstrated** 24:13
  33:25
**demonstrates** 33:14
**denied** 29:2,2
**deny** 23:18,25 28:6
  38:18,20 41:10
**denying** 23:23
**depends** 33:6 41:9
**deposit** 6:18,23 7:10
  8:4,5 11:22 12:2
**deposited** 9:3 12:1
**deposits** 6:2,3,4,6,12
  6:23 7:2,4,5,11,14
  7:16,17,20 8:20
  10:5,15
**Despite** 37:6
**destination** 12:19
**DIAMOND** 1:7
**difference** 23:2
**different** 23:15
  26:19 39:12
**differs** 36:21
**difficult** 20:3 23:19
**digital** 19:22,25
  22:17,18

**direct** 31:25 33:21
  33:22 38:8
**directly** 33:19
**dirty** 11:13
**disappeared** 31:9,10
**discontinue** 32:23
**discovered** 22:1
**discussion** 17:13
**dispose** 35:10
**distinction** 23:4
**distribute** 3:12
  22:14 29:5 30:11
  36:24 38:22
**distribution** 36:19
**distributor** 27:8
**District** 1:1,1,12
  22:24
**DIVISION** 1:2
**doctrine** 37:10
**doing** 32:17 34:14
  35:2
**dollar** 34:11
**dollars** 7:19 15:9
  16:7 34:8,13
**Dominican** 24:14
**dominion** 22:4
**done** 21:21
**down** 30:24
**downstairs** 29:25
**drawer** 4:15,16,25
  18:22 22:20 23:11
**dresser** 15:15,16,18
  18:16,17
**drive** 1:19 40:13
  41:5
**driven** 40:8
**driving** 12:5 40:24
  41:1
**drops** 40:15
**drug** 3:15 5:5 9:8
  10:3 11:8 12:8
  13:18 14:9 16:11
  17:2,19 18:3,6,10
  22:13 23:16 26:5
  31:4 32:24 33:16
  34:17 35:6 37:20
  37:24,25 38:5,25
  39:7,8,10,18 40:23
  41:2
**drugs** 3:17,17 5:18
  5:18 8:19 9:2 11:9
  11:16 14:14,15,16
  17:13 22:14,17,18
  30:20,21 31:1 35:7
  36:24 39:23 40:21
  41:2
**due** 37:13
**duffel** 15:6 20:21
**Dulce** 1:8 4:4,22 5:2
  5:16 6:7,13,14 7:2
  7:14 9:3 11:4
  16:23 17:4,16
  18:19 31:7,20
**during** 26:12 30:11
  30:13 31:12 35:4

**35:12,13,25**

**E**

**E** 41:18,18
**each** 3:7 16:16 18:21
  25:6,7 30:25 35:24
**early** 30:22
**easy** 37:24
**effect** 33:22
**eight** 10:1 15:23
  29:24
**either** 18:19 27:9
  30:4
**else's** 23:17
**email** 41:25
**embracing** 37:4
**empty** 40:24
**end** 16:4 23:19 41:11
**ended** 31:1
**ends** 32:17
**enforcement** 12:12
  12:24 29:8 31:11
**engage** 5:23
**enough** 5:4 8:21,21
  11:12 21:9,17
  22:23
**entire** 26:25
**envelope** 15:7,10
  16:8,9
**Espino** 40:5
**ESQ** 1:14,14,17,19
  1:21
**essence** 33:12
**establish** 21:24
**established** 32:7,13
**even** 3:16 9:10 30:3
  30:18 38:6
**event** 13:15 28:4
  32:7
**events** 37:5,16
**ever** 3:13,18
**every** 23:14 26:13
**everything** 14:11,13
  23:10 38:2
**evidence** 3:13,16,18
  4:15 5:10,14,19
  6:1,3 7:18 9:12
  10:12 11:7 13:18
  13:22 14:9,11
  15:13 17:11 18:5
  18:10 22:16 24:4
  24:10 26:18 27:20
  27:25,25 29:5,18
  30:17,21 33:14,24
  34:5,17,21 35:1
  38:8 39:3,15
**Exactly** 18:7 27:17
**examination** 28:4
**example** 26:16 36:17
  36:22
**exception** 16:17
**exclusive** 27:15,17
**exercises** 22:4
**existed** 33:10

**expanded** 36:10 37:1
**expect** 38:25
**Expedition** 11:6
**explain** 24:5
**extension** 37:11
**eyeglass** 19:9

**F**

**F** 41:18
**facet** 22:12
**facilitates** 36:22
**fact** 30:24 37:6 39:5
   40:13
**fall** 28:12
**familial** 17:20
**family** 22:21
**fanny** 3:19 4:24
   18:23 19:6,7
**far** 32:8 33:14
**father** 6:8
**favor** 21:22
**Fax** 41:24
**February** 1:5 34:2
**Federal** 3:4
**Federally** 1:24
**FEDERICO** 1:11
**female** 21:14
**figure** 25:7
**file** 10:11
**finally** 30:25
**financial** 11:18
   12:25
**find** 9:25 12:14
   31:18 32:9,11,13
   34:14
**fine** 6:23
**firearm** 22:19 36:25
**first** 10:7 11:17 12:7
   14:2 33:10 36:16
   38:13
**five** 29:5 41:8,9
**FL** 1:16,18,20,22,25
   41:24
**Florida** 1:1,4 29:13
   29:21
**flow** 39:3
**Flynn** 1:19 9:12 24:1
   24:2,8,24 25:1,3
   26:9,15,20,24
   27:19 28:9 30:1,17
   30:21,24 32:16
   33:1,12 39:22
   41:13,15
**folks** 16:14
**following** 21:23
   36:14
**fond** 28:24
**foot** 15:18
**foregoing** 41:19
**foreign** 11:19,25
   12:3
**foreseeability** 37:19
**foreseeable** 37:2,12
   38:2

**forth** 8:11
**found** 3:19,19 4:24
   13:2 15:9,22 16:12
   16:12,13,13,14,15
   16:16 19:12,14,17
   20:5,7,19 21:21
   29:14,15,23,24
   30:9,10 31:6,13,14
   31:17,19 35:7
   36:23 37:8
**four** 16:3
**Fred** 41:15
**friend** 21:5
**from** 6:4,4,17 9:5
   10:25 11:2,4,23,25
   12:4 13:17 15:18
   19:2 20:3 21:19
   22:2,11,14 24:6
   32:1 34:1,2,3
   36:21
**full** 23:14
**further** 28:9
**furtherance** 36:1
   40:22,24
**F.2d** 37:18
**F.3d** 2:9,14 21:4,19
   22:11 36:14

**G**

**gap** 34:20 38:7,11,23
   38:24
**garbage** 22:1
**gardeners** 34:15
**Gardens** 40:16
**gave** 6:5
**Generally** 36:15
**GEORGE** 1:21
**gets** 12:16 37:25
**give** 21:18 28:21
   29:11
**given** 41:5
**glad** 7:11
**go** 3:7 9:24 10:18
   12:14,19 27:12,14
   32:19 38:14 39:21
**goal** 36:17
**goals** 36:22
**goes** 15:25
**going** 6:22 8:25 9:1
   13:8 16:4 23:18,25
   28:6 38:13,14,17
   38:17,20 39:1
   41:10
**good** 7:11
**Government** 1:14
   6:1,7,16 20:15
   21:22 22:16 24:9
   24:12,15 28:13,18
   32:18 33:4
**grabbed** 12:22
**grabbing** 13:4
**grams** 3:18 18:15
**grand** 41:7,8,8
**granted** 21:20 22:24

**great** 13:11
**green** 16:16 18:23
   19:7
**Gregory** 25:14
**group** 24:13 25:7
   26:21
**groups** 27:7
**guess** 6:22
**guilty** 30:10 36:23
**guy** 13:13

**H**

**H** 1:14
**half** 34:14
**hamper** 22:19
**happen** 23:16
**happened** 36:9 38:2
**happens** 34:19 39:20
   39:22
**hard-working** 34:15
**having** 9:19 10:23
   16:7
**Head** 25:14 26:11,17
   27:6,22
**heard** 24:3,6
**held** 12:25 14:5 21:6
   32:14 36:24
**help** 10:10
**helps** 8:9,10 9:14
**Helso** 2:10 12:22,22
   13:10,11
**henchmen** 24:17
**her** 5:17 6:5 8:2,3,7
   8:8 10:7 12:4,12
   14:13,22 15:13
   17:16,24 18:5,14
   20:17 21:11 22:20
   22:22 23:16
**heroin** 3:12 10:1
   15:22,23,25 29:19
   29:25 31:15 32:5
   32:11 34:11
**heroine** 27:4
**Herr** 1:23 41:21,22
**Herrera** 26:24 27:1
   27:20
**herself** 16:25 17:4
**hey** 6:22
**hidden** 22:19
**high** 2:12 22:10 28:2
**him** 9:24 24:22 26:4
   27:5
**historical** 18:10
**hold** 21:7
**holding** 37:13
**holds** 30:12 35:23
**home** 40:17
**honestly** 25:21
**Honor** 3:3,10 9:4,16
   10:6 12:7 13:7,19
   15:3,15 16:6,11
   17:12,14,22 18:9
   18:18,23 19:5,21
   20:4,6,12,15 24:2

25:5,12,21 26:2,6
   27:3,6 28:18,23,24
   29:7,15,22 30:1,6
   30:9,17,24 31:2
   32:3,12,16,23,25
   33:16,24 34:6 35:7
   35:12,18,21,23
   38:9,12 39:5,13,16
   39:25 40:14,20,22
   41:8,13
**HONORABLE** 1:11
**hook** 12:13
**house** 5:15,15 9:24
   10:8 12:15 13:5,21
   13:23,25 14:4,5,5
   14:14 15:23 18:14
   21:5,5 29:21 32:9
   35:8,8
**housekeepers** 34:15
**hub** 24:20
**Huck** 25:11,25
**hundred** 41:9
**hundreds** 7:19
**husband** 4:7,8,9
   5:12 12:12 14:13
   17:16 20:17
**husbands** 17:8
**husband's** 12:13
**H-i-g-h** 22:11

**I**

**identified** 5:14 18:19
**III** 1:14
**illegal** 6:4 8:23 20:11
   21:6
**illustrious** 32:18
**immigrants** 10:10
**Immigration** 8:9
**implementation**
   36:22
**incidents** 30:2
**include** 37:2
**income** 8:11
**independent** 26:21
**indicated** 9:7 41:2
**indicative** 16:25
   31:3
**indict** 26:4
**indicted** 25:19
**indictment** 3:10
   28:12 30:14
**individual** 3:7 5:13
   13:1 21:5 34:4
   37:8
**individuals** 27:3
   28:3 34:17
**infer** 22:8
**informants** 24:14
**information** 20:6
**inside** 3:19 14:3,15
   4:16,24 10:13
   19:22 23:10,11
   31:8
**instance** 12:10,21

13:2
**Instruction** 28:23
**insufficient** 21:24
**intended** 37:7 38:1
**intent** 3:11 27:10
   29:5 30:10 38:21
**interstate** 11:19 12:3
   12:6,8
**introduced** 6:7
**involved** 5:24 12:8
   22:12 25:13 34:10
**involving** 9:19 24:16
**ironically** 22:10
**irrelevant** 26:17
**issue** 37:24
**issued** 14:2
**items** 4:10 13:25
   19:17,19

**J**

**J** 1:19,21
**James** 24:16,17,23
   25:11,14 26:11
   27:22
**January** 28:16 32:5
   38:22
**joint** 4:22 20:17
**Juan** 13:11
**judge** 1:12 3:6 4:23
   5:21 6:25 7:6,7,10
   7:18 8:1,5,14,22
   9:12 10:12,17
   11:15 12:2 13:8,12
   20:8 21:1,17,20
   22:24,25 25:10,18
   25:25
**judgment** 3:4 5:21
   21:20 22:24 23:21
   23:23 28:7 38:18
   41:10
**jury** 21:21 22:8
   24:10 28:6
**just** 6:5 12:4 21:1,12
   21:15 26:12 27:8,8
   39:3 41:4

**K**

**Kenneth** 25:14 27:6
**keys** 20:12 41:5
**killed** 37:25 38:1
**kilo** 16:1
**kilogram** 29:19
**kilograms** 15:23
   29:5,16,24
**kilos** 10:1 15:20,22
**kind** 11:11 17:15
   24:7 34:15 40:6
**knew** 10:13 31:13
**know** 4:21 6:15 7:5
   11:17 13:8 17:6,8
   17:23 18:17 20:13
   25:21 26:13 27:24
   27:24 28:24,25
   41:4

**knowing** 21:25 22:8
**knowledge** 10:13,14
  10:15,15 36:3
  37:15
**known** 26:16
**knows** 17:16,24
**Kotteakas** 2:8 24:9
  24:18

**L**

**lack** 10:14,15 36:2
**landlord** 14:3
**large** 10:8 14:23,25
  15:8,18 19:22
  20:19 22:7 24:11
  31:6,18 32:24
  33:13
**LARRY** 1:23 41:22
**lasts** 33:7
**late** 39:18
**later** 7:21 9:7,25
  33:4
**latest** 33:15
**launder** 11:21
**laundering** 5:24
  10:18 12:1 17:1
  22:12 23:22 31:3
  37:21 40:18
**law** 12:7,12,24 29:7
  31:11 38:16
**Leading** 18:13
**least** 9:23 14:5 24:12
  31:25 32:8 37:15
**left** 20:7
**let** 7:20 21:18 24:4
  26:17
**Let's** 6:13,20 9:8
  21:8
**liability** 32:17 36:10
  36:15 37:2,11 38:7
**liable** 30:12 32:15
  35:24 36:24
**like** 3:6 7:25 8:1,16
  13:14 38:16
**limited** 37:13,14
**Lindsay165@aol.c...**
  41:25
**link** 8:23 9:2,17 10:4
  11:15,16 39:25
**linked** 13:25 33:19
**listening** 16:19
**little** 9:6 13:15
**live** 13:11 20:22
**located** 3:24 15:15
  18:24 29:12 31:16
  40:16
**location** 12:23 14:4
  16:17 29:17 31:14
  32:10
**logic** 32:20
**long** 33:7
**longer** 31:15
**look** 38:16
**looting** 13:16

**lost** 13:13
**lot** 7:12 8:16 10:10
  14:20 16:6,8 28:25
  35:10
**lots** 21:10
**Louisiana** 40:9
**low** 16:3

**M**

**made** 6:24 13:17
  16:21,23,24
**make** 6:22 11:22
  23:18,20,20
**male** 19:20 20:2
  21:14
**many** 6:23 7:1,4,5
  40:8
**March** 9:20 10:2,7
  10:22 29:19 33:18
  38:23
**Martin** 4:4,7,17,18
  4:19 5:11,13,24
  9:10,15 17:5,17
  18:11,19 31:9,12
  31:21,23 33:17
  34:23 35:4,11
**Martinez** 5:25 6:8,9
  9:6,10,15,20 17:6
  17:10,18 18:11
  31:7,10,16,20,24
  32:6,9,17 33:2,3
  33:17,25 34:2,9,22
  35:4,11 39:10
**master** 3:23 4:2,6,14
  4:22 18:14,20,24
  20:16,18
**material** 20:24
**matter** 5:9 41:20
**may** 3:8 20:4 22:5
  35:24 36:24
**maybe** 9:10
**mean** 4:18 9:12
  10:20 11:12,21
  16:22 17:10,23
  24:5,8 26:13 34:13
**meaningless** 16:8
  17:15
**means** 26:3 27:12
  28:21
**meetings** 3:14
**member** 22:21 26:13
**members** 25:5
**mentioned** 36:11
  37:17 39:5 40:7
**men's** 4:25,25
**Mercury** 40:1,7,8
**mere** 5:2,3,3 6:2,6
  7:15,17 10:23
  21:24 22:1
**met** 3:14
**Miami** 1:2,4,16,18
  1:20,22,24,25 34:4
  40:16 41:23,24
**might** 10:18

**million** 16:3 34:11
**minor** 6:8 37:14
**minute** 34:3
**Miramar** 5:15 29:21
**missing** 11:10
**Molina** 2:13 21:19
  22:16,20,25 23:13
**Molina's** 22:1,3,7,8
  22:17,21
**monetary** 5:17
**money** 3:17 5:23
  6:10,11,16,18,19
  7:13 9:2,18 10:4
  10:18 11:13,16,17
  11:21,25 12:1 13:1
  13:9 14:25 15:2,4
  16:5,6,8,24,25
  19:1,2,3 20:23
  21:9,10 22:7,12
  23:14,22 31:2 34:1
  34:3 37:20 39:3
  40:14,18 41:1,2,3
**months** 7:20 31:10
**more** 5:5 23:24
  35:10 37:14
**MORENO** 1:11
**most** 16:14 17:8
  33:24
**Mother** 2:14 36:13
**Mother-in-law**
  17:22,23
**motion** 23:21,23
  28:7 38:18 41:10
**motions** 35:10
**move** 3:4 5:21 24:2
**much** 7:13 13:10
  15:2,4,21,24 16:2
  19:3 24:4 27:25
  34:7 41:3
**multiple** 28:10
**multi-kilo** 7:19
  34:11
**Munroe** 16:18
**Munroe's** 9:22 29:8
**murder** 36:11 37:6,9
**murder-drug** 36:12
**must** 28:12 37:13
**M-o-l-i-n-a** 21:19

**N**

**N** 6:8 41:23
**name** 15:8
**narcotics** 36:18
**NATHAN** 1:17
**Natividad** 40:5
**nature** 36:21
**Neal** 9:22 16:18 29:8
**nearly** 22:2
**need** 11:12 17:17
**Neither** 40:20
**never** 18:18 32:17
  33:10
**New** 40:8
**Newton** 2:9 21:1,4

**nexus** 8:22 12:8
**nice** 13:13
**night** 3:20,21,21
  4:19,21,23 5:1,7
  5:11 14:17,21
  15:11,12 18:18,24
  19:1,2,3,12,15,18
  20:5,7,13 22:20
  23:11
**non-participation**
  36:2
**Nordis** 31:7,20
**North** 1:24
**Northeast** 1:15
**Northwest** 29:13
**notary** 8:10
**nothing** 5:1,16,17,17
  5:18 6:5 23:5
  40:10,13
**notwithstanding**
  36:1
**nowhere** 31:17
**number** 5:3 8:14
  11:11 16:21,24
**numerous** 24:10

**O**

**observation** 33:22
**observed** 35:3
**obtained** 27:4
**obviously** 10:15
  13:13 17:6 20:11
  20:16 23:16 38:14
**occurred** 33:2 38:5
**occurring** 37:4
**October** 31:5
**off** 12:13,17
**offense** 36:20 38:4
**offenses** 35:17,25
  36:2
**office** 8:13 25:23
**officers** 12:12,24
  29:8 31:11
**offices** 8:15
**Official** 1:23 41:23
**often** 24:3
**oh** 24:24 27:8,8
**Okay** 9:2 14:1 20:25
  41:14
**older** 6:9
**once** 32:12
**one** 8:18 10:19 11:23
  13:20 15:11,17
  17:6 19:22,25
  20:20 21:1 24:11
  25:6,11,23 26:7
  27:12 28:11 29:19
  30:20 33:13 34:3
  37:22,25 39:25
  40:4 41:6
**ones** 7:18
**ongoing** 36:21
**only** 3:18 6:1 7:14
  11:10 15:17 22:12

  23:2,3 26:7 28:13
  33:1 40:21
**open** 14:24 22:20
  23:5,7
**opening** 8:1
**operate** 27:7,7
**opinion** 21:22
**order** 11:21 23:20
**orders** 16:24
**originally** 19:25 37:3
  37:7,12
**Ortega** 25:15
**OSBORNE** 1:14
**Osvaldo** 25:15
**other** 4:10 5:7 19:15
  19:19 20:5 25:6
  26:5 37:3 39:25
**others** 26:12
**out** 9:25 10:7 12:15
  13:5 14:3,8,23,24
  16:21,23 20:9,24
  32:19 39:1
**outside** 41:15
**over** 3:7 7:3,9,12
  22:5
**own** 14:6 23:17 39:1
**owns** 22:4

**P**

**P** 1:17
**pack** 3:19 4:24 18:23
  19:6,7
**packaging** 19:10
  20:24
**Page** 2:2,6
**paid** 8:2,3 41:6,7
**Panama** 34:4
**part** 21:7 22:13 26:1
  26:14
**participant** 3:15
**participated** 5:19
**participating** 32:6
**participation** 21:25
  22:8
**particular** 12:10
  36:23
**parties** 36:2
**party** 35:24
**passport** 8:10
**passports** 22:19
**payable** 16:25
**people** 6:21 8:12,16
  10:4,11 14:20 16:8
  25:16 26:22,25
**period** 4:26,22 33:9
  35:5,12,13
**permission** 3:7
**person** 12:20 22:4
  27:14
**personal** 14:6
**persons** 25:7
**pertain** 20:14
**picked** 9:15
**picking** 5:18 11:11

**pickups** 40:15
**picture** 4:24 39:2,3
**pictures** 18:22
**Pinkerton** 2:11,15
  28:19,22 29:3,4
  30:5,12,16 35:18
  35:20,22,23 36:3,9
  36:15 37:2,10,23
  38:7,22
**place** 12:20 17:11
  33:10
**plain** 22:17
**Plaintiff** 1:5
**plastic** 16:13,16
**played** 37:14
**plus** 28:9
**point** 20:3 24:19
  32:23 33:18,23
  38:12
**possess** 3:12 30:10
**possession** 20:17
  22:6 28:16,17 29:5
  32:4,5 36:19,25
  38:5,21
**possibly** 28:14
**Postal** 16:24
**pouch** 4:13 23:11
**precise** 36:21
**prepare** 8:9
**presence** 5:3,3 10:23
  21:24 22:1
**present** 3:13,16
  31:12
**presented** 22:16
  24:10,15
**preserve** 23:21
**presumes** 12:7
**prison** 32:19
**probably** 17:17 24:3
  40:3
**problem** 23:13
**problems** 23:23
**Procedure** 3:4
**proceed** 3:8 41:14
**proceedings** 41:20
**process** 37:13
**proof** 24:15 26:10,11
  30:3 40:12
**property** 14:9
**proposition** 36:7
**prove** 31:22 33:13
  39:17
**proved** 33:4
**proven** 9:8 10:3 12:6
**proves** 34:10
**public** 13:12
**pull** 25:22
**purposes** 28:1
**purse** 15:13
**pursuant** 3:3 37:9
**put** 8:20 12:22
**putting** 13:5

———————
          **Q**
———————

**quantity** 3:17 22:7
**question** 17:9,24
  18:12 39:2,14
**quickly** 35:10 38:3

———————
          **R**
———————

**R** 41:18
**raise** 41:11
**rather** 38:2
**read** 7:20
**ready** 41:14
**really** 18:6 37:19
  38:1
**Realtime** 1:24
**reason** 34:12
**reasonably** 22:8
  37:2,12,16
**reasons** 5:21
**recall** 30:1
**recent** 33:24
**recognize** 26:6
**records** 34:1
**refer** 29:21
**regarding** 5:16
  30:15
**relationship** 8:20
  17:10,18,20,21
**released** 31:15,21
**reluctant** 23:24
**relying** 28:18
**remember** 13:17
**rented** 21:5
**renting** 14:6
**REPORTED** 1:23
**Reporter** 1:23,24
  41:23
**Reporter's** 2:3
**requires** 11:20
**residence** 3:23,25
  9:22,25 10:2 11:2
  11:3,7 12:4,14
  14:6 15:18 16:18
  22:3,5 29:9,10,10
  31:7,12,13,19
  40:17,17
**residue** 22:18 29:16
**respect** 13:21
**responsible** 32:21
  33:1,3
**result** 37:4
**reversed** 21:21
  22:23
**right** 4:6 6:19 18:24
  19:1,2,3,12,18
  26:4,10 31:11
  32:18 35:11
**rim** 27:23
**ringing** 12:13
**Robbins** 41:16
**role** 37:14
**roller** 9:24
**room** 1:24 16:11,12
  22:25
**roughly** 34:3

**RPR-CM-RMR-F...**
  41:22
**RPR-RMR-FCRR...**
  1:23
**rubberbands** 16:13
  19:11
**Rule** 1:11 3:3 24:2
  35:10
**Rules** 3:4
**Run** 28:15
**running** 7:24 13:5

———————
          **S**
———————

**Sable** 40:1,7,8,13
**same** 9:25 13:2
  16:11 25:16,16,24
  26:1,12,15 34:3,4
  36:7 37:20 40:16
**Santana** 26:24 27:2
  27:21
**Saul** 1:7 9:6 17:5
  25:8,14,19 27:4
  28:20 31:16,24
  32:8 33:22,25 34:2
  34:9,22 35:1
**saw** 9:7
**saying** 25:2,24 30:19
  33:9,12 39:2
**says** 14:20 21:23
  36:14
**scale** 22:17,18
**scales** 4:12,13 11:9
  11:16 14:22,24
  16:13 19:22,25
  20:24 23:7,9,10
**scenario** 36:20
**scope** 33:2 37:7
**search** 16:17 29:8
  31:11,13 32:11
**second** 5:23 14:9
  36:20
**Secondly** 11:18
  12:10
**see** 8:5 20:3 23:13
**seen** 9:12 23:14 30:3
  30:18
**seized** 19:2,2 22:2
  33:14
**seizure** 9:23 18:14
**seizures** 9:19,21
**sell** 27:11
**sense** 24:4
**sent** 34:2,8
**separate** 24:16,17
  25:2
**Service** 16:24
**several** 9:19 10:6
  13:25 20:12 25:5
  36:6 40:14
**severance** 29:2
  36:12
**share** 22:25
**shared** 18:20 23:3
**shoe** 22:22

**shop** 7:25
**show** 13:11 18:22
**shown** 4:24 6:1,16
**shows** 17:16
**side** 3:20
**Sill** 2:14 36:13
**silver** 40:7
**similar** 12:21
**simple** 27:19
**simply** 27:7
**single** 26:10
**sinks** 14:21
**sitting** 14:23 21:15
**situation** 39:12
**situations** 36:16
**six** 7:20 29:16 31:20
**sleep** 20:23
**small** 7:18
**smaller** 33:13
**some** 7:20 8:2 12:19
  12:20,20 13:16
  17:11 18:22 28:3
  33:9 37:15 38:16
**someone** 6:22 11:13
  11:13 13:6 23:1,3
  23:17 39:1
**something** 7:24
  13:14 20:9,10
  32:18 38:24
**sometimes** 6:21,21
  27:11 40:10 41:2,2
**somewhere** 13:6,6
**son-in-law** 17:24
**sorry** 16:23 40:2
**sort** 27:9
**source** 6:5 31:1
**SOUTHERN** 1:1
**Southwest** 29:20
**so-called** 28:22
**specified** 12:9
**spoke** 3:14 29:1
**spoken** 3:18
**spokes** 24:20,21
**stage** 38:18
**stand** 18:24 19:1,2,4
  19:12,16,18 20:5,7
  20:13 22:20
**standing** 20:13
**stands** 18:18
**start** 9:5
**started** 39:19
**stash** 5:15 9:24 13:6
  13:25 14:4,5,25
  15:23 29:21 32:9
  35:8
**stashed** 10:1
**state** 11:23 13:12
**statement** 22:21
  28:1
**statements** 13:16
  28:3
**States** 1:1,4,12,23
  2:12,13,14,15
  16:24 21:19 22:10

  28:19 36:13 41:23
**stating** 22:11
**statute** 11:20
**still** 29:16 32:24
  33:16 34:23 39:2,5
  39:17,18
**stop** 33:9,10
**stopped** 12:12,24
  13:9 15:14
**storage** 31:14
**store** 22:22 34:3
**strains** 20:20
**Street** 1:15 29:20
**strong** 23:15
**stronger** 5:10,12
  35:11,13
**stuffed** 29:25
**subject** 28:4
**substance** 30:11
**substantive** 28:10,13
  28:19 30:7 35:17
  35:25 36:16,18,20
  36:24 37:3,4,12,17
  38:4
**sufficient** 18:5 21:7
  23:22 37:9
**suggest** 5:1,10
**sum** 15:8 19:22
  20:19
**summary** 6:2
**supplied** 30:20
**supplier** 27:8,12,13
  27:13
**supply** 27:5
**supplying** 26:21
  39:23
**support** 37:9
**Supreme** 24:8
**sure** 14:18 20:8
  41:11
**surveillance** 30:2
**SUSAN** 1:14
**suspect** 17:8
**S-i-l-l** 36:14
**s/Larry** 41:21

———————
          **T**
———————

**T** 41:18,18
**table** 2:1 3:20,21,22
  4:19,21 5:1,7,11
  14:17,23 15:12
  23:11
**tables** 4:23 14:21
  15:11
**take** 13:5 38:16 41:2
  41:2
**taken** 12:11
**takes** 12:17 26:7
**taking** 12:18,19
**talked** 29:3
**talking** 13:20 25:9
  25:10 37:19 38:4
**talks** 38:10
**taxes** 8:11 10:11

telephone 12:13
tell 14:1,12,15 18:17
  18:21 19:19
Ten 13:15
testified 24:14 28:4
testimony 24:18
  31:25 33:21
thee's 5:17
their 4:22 14:6,14
  16:14,15 17:8 28:1
  35:8,8 37:9,16
  39:1
theories 38:22
theory 28:13,14
  35:19,20 36:9
thereof 36:3
thing 11:10,11 34:15
  39:1
things 10:6 27:9
  33:1
think 8:22 9:1,10
  11:19 13:15 19:11
  21:17 23:15,22
  27:6 29:2
third 10:20
thousand 15:8 16:7
  34:8,13 41:9
thousands 7:19
three 7:3,9,12 14:3
  16:3 33:4 34:24,25
  38:6 41:7,8
through 13:25 31:5
  34:1 35:15
time 14:8 31:9 33:9
  35:5,12 38:7 39:24
  41:6,7
times 16:3 30:4 40:8
timing 10:5 37:22
Today 24:7
together 8:21 14:14
  16:10 17:5 18:1,11
  25:8
told 41:5
top 20:13
totally 24:16,17
totals 7:3
trafficking 12:8
  17:19 18:10 31:4
  32:24 33:16 34:17
  40:23
transaction 11:18
  12:25 13:2,4,7
transactions 7:19
TRANSCRIPT 1:11
transcription 41:20
transfer 34:1
transport 11:23
  12:23
trial 1:9 13:23 33:7
tried 25:10,11,25
truck 12:4,16,16
true 24:19 26:5,15
  40:11
trunk 12:23

tub 29:17
turn 37:5
twelve 39:21
Twenty 13:14
twice 7:10
two 4:23 9:15 10:4,8
  14:2,19 24:17 27:9
  34:22,24 36:16
  38:5
two-year 34:20
type 37:20

     U

unaware 20:22
under 16:14,15
  27:19,20 35:18,20
  38:22
undercover 38:1
underneath 14:25
  15:5 19:14 20:20
  20:21 31:8
understand 28:5
understanding
  23:19
unexplained 31:6,19
Unfortunately 35:9
unintended 37:3,5
  37:12,17
Union 34:1
United 1:1,4,12,23
  2:12,13,14,15
  16:24 21:18 22:10
  28:19 36:13 41:23
unlawful 12:9 32:14
unless 33:4
unlike 23:13
unreasonable 38:25
until 12:1 31:25
used 6:4 21:5
usually 6:19 15:25
U.S 1:15 2:10,11,11
  12:22 21:1,3 22:22
  25:22 36:3,3

     V

vacation 17:6 18:1
vents 29:25
versed 8:12
very 12:21 20:19
  24:3,12 28:24
  33:15
vicariously 35:24
video 17:4,14,15,17
view 22:17 23:5,7
Vila 1:21 3:2,3,10,23
  4:2,4,7,9,11,13,15
  4:17,19,23 5:8,10
  5:13 6:11,13,16,20
  6:25 7:2,7,9,14,18
  7:23 8:1,5,8,14,18
  8:22 10:12,17,22
  11:2,4,6,9,15,17
  11:23 12:2 13:8
  14:20 15:13 20:8

21:1,4,10,11,14,17
22:25 23:5,8,10
VINCENT 1:19
vs 1:6 2:10,11,12,13
  2:14,15 12:22 21:1
  21:3,19 22:10
  28:19 36:3,13

     W

waive 26:4,9
walked 5:14
walking 10:7 12:4
want 10:11 18:16
  24:1 28:21 30:15
wash 14:21
wasn't 17:11 25:11
  25:19 40:6
watch 4:25
watching 9:23
way 13:13 16:4 31:5
week 7:10
well 5:10 6:18 8:12
  8:18 10:18 14:12
  14:20 15:9 20:23
  20:23,24 21:18
  24:22 26:18 27:24
  30:8 31:17
were 3:17,19 4:10,13
  6:23 13:16 14:6
  15:22 18:18 19:17
  20:22 25:23,24
  28:4 29:17 31:6,24
Western 34:1
we're 37:19
wheel 27:23
whole 12:12
wife 4:7,8,9 12:15
  14:8
William 1:14 5:25
  6:8 9:6,20 17:5,18
  18:10 31:10,16,23
  32:6,9 33:2,3,17
  33:25 34:2,8,22
  35:4 39:5
wish 24:2
withdraw 32:23
witness 40:2,23
witnesses 5:14 9:7
  32:1,19 39:23
wives 17:8
words 37:3
worked 8:2 25:6
  27:4
working 25:7
worth 15:24
wrapping 16:16,16
wrappings 29:15
writes 14:8
wrote 14:3,7
Wynter 1:7,17 9:6
  17:5 24:16,19 25:8
  25:14,19 26:16,20
  27:4,5 28:20 30:2
  30:18 31:1,17,24

32:8,20,22 33:19
33:22,23,25 34:2,9
34:22 35:1,14 39:2
Wynter's 32:17

     X

x 1:9

     Y

year 36:5
years 7:3,9,12 13:14
  13:15 33:4 38:5,6
  39:21
York 40:8

     $

$1200 7:21
$13,000 31:8
$187,000 10:8
$2,000 15:20
$2800 7:21
$300,000 21:15 22:2
$32,000 15:5 16:14
  16:15 19:14 20:21
$49,000 7:15
$58,000 7:3
$6,000 8:6,16 16:24
$600 7:20
$7,000 19:11 20:1
$700 34:9
$85,000 15:25
$900 7:21

     0

04 38:6
05 34:19 38:5 39:9
07 34:19 38:23,23
07-20772-CR-MO...
  1:3

     1

1 3:5,10 23:24 28:11
  38:19
11th 2:9 21:4,22
  22:11,23 38:14
117 22:11
11720 29:20
12 1:5 2:10
1214 2:14 36:14
1221 1:17,21
14 31:8
1450 1:19
15 29:19
15th 10:22 38:23
150 16:1
150,000 10:22
1946 36:6
1986 22:15
1996 2:14 36:14
1997 22:11
1998 35:15

     2

2 28:16 29:6
200 16:3
2003 30:22
2004 30:22 31:25
  32:2,8 33:15,19
2005 34:2 35:2,15
2006 21:19
2007 9:20 10:2 31:3
  31:5 32:5 33:17,18
  35:17
2008 1:5
21 2:9,13
22 2:7,12
23rd 28:16 32:5
  38:22
24 2:8
24th 29:20
27 7:7,11
28 2:15
29 1:11 3:3 24:2
  35:10

     3

3 10:17,20 29:18
305.371.5300 1:18
305.373.5705 1:22
305.523.5290 1:25
305.858.1414 1:20
305.961.9000 1:16
305/523-5290 41:24
305/523-5639 41:24
328 2:11 36:3
33128 1:25 41:24
33131 1:18,20,22
33132 1:16
36 2:6,11,14
38 3:18 18:15
3800 29:12

     4

4 3:5 23:24
4th 1:15
400 1:24 41:23
41 2:3
44 2:9 21:4
443 21:19
464 22:11

     5

5046 3:24

     6

6 1:9 3:5 10:21,22
  23:24
640 2:11 36:4

     7

70 29:13
755 37:18

     8

8NO9 1:24
824 21:19
87 2:14 36:14

| 9 |
|---|
| **913** 2:9 21:4 |
| **95** 39:19 |
| **99** 1:15 |