```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3                      Case 07-20772-CR-FAM
 4
     UNITED STATES OF AMERICA
 5
                          Plaintiff,
 6                                              MIAMI, FLORIDA
          vs.
 7                                        FEBRUARY 4, 2004
     SAUL WYNTER and DULCE
 8   CASTELLANOS
 9                        Defendants.
     _____
10
11
                      TRANSCRIPT OF MOTION TO SEVER
12              BEFORE THE HONORABLE FEDERICO A. MORENO,
                      UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
15   FOR THE GOVERNMENT:
16                        WILLIAM BRYAN, A.U.S.A.
                          SUSAN OSBORNE, A.U.S.A.
17                        99 N.E. 4th Street
                          Miami, FL  33132 - 305/961-9337
18
19
     For Defendant        VINCENT FLYNN, ESQ.
20   Wynter:
21   For Defendant        GEORGE VILA, ESQ.
     Castellanos:
22
23   REPORTED BY:         LARRY HERR, RPR-CM-FCRR-AE
                          Official Federal Court Reporter
24                        400 North Miami Avenue, Room 8N09
                          Miami, FL  33128
25   305/523-5598
```

1                            TABLE OF CONTENTS

2                                                               Page

3   Reporter's Certificate

4

5                          INDEX TO EXHIBITS

6   Exhibits                        Marked for           Received

                                    Identification    in Evidence

7

    Description                    Page      Line    Page     Line

8

9

10                          CITATION INDEX

11                                                              Page

12

13                     SIDE-BAR CONFERENCE INDEX

14  Descriptions                                                Page

15

16

17

18

19

20

21

22

23

24

25

1

2

3          THE COURT:   United States of America vs. Saul Wynter

4   and Dulce Castellanos.   On behalf of the government?

5          MR. BRYAN:   Good morning, your Honor, William Bryan on

6   behalf of the United States of America, with me at counsel

7   table is Assistant United States Attorney Susan Osborne, and

8   the case agent Brad Smith from the DEA.

9          THE COURT:   On behalf of Saul Wynter who do we have?

10          MR. FLYNN:   Good morning, your Honor, Vincent Flynn

11   and Nathan Diamond on behalf of Mr. Wynter

12          THE COURT:   On behalf of Dulce Castellanos, who do we

13   have?

14          MR. VILA:   Good morning, your Honor, George Vila on

15   behalf of Dulce Castellanos who is present in court.

16          THE COURT:   Mr. Vila, come forward to the lectern,

17   please.   At the calendar call someone stood in for you.   And I

18   wanted to have a chat regarding -- your client is the only one

19   who needs an interpreter, I take it; is that right?

20          MR. VILA:   Yes, your Honor.

21          THE COURT:   I wanted to talk about the suppression

22   hearing.   Was there a transcript of what happened in January

23   before the magistrate?

24          MR. VILA:   Yes, Judge.

25          THE COURT:   It is not filed.

1        MR. VILA:  I think all transcripts except maybe the

2    last one was filed.

3        THE COURT:  The last one is the one I'm talking about.

4    What's the last one?

5        MR. VILA:  The last one is January --

6        THE COURT:  9th.

7        MR. VILA:  I think it is January 2nd.

8        THE COURT:  Look at your objections then.

9        MR. VILA:  Your Honor, what page?

10       THE COURT:  Page 1.

11       MR. VILA:  That is when the report and recommendation

12   was filed.

13       THE COURT:  And the transcript is of January 2nd.  I

14   don't have a transcript of January 2nd.  Did you order a

15   transcript of January 2nd?

16       MR. VILA:  Yes, I did, Judge.

17       THE COURT:  I didn't receive it.

18       THE COURT:  Does the government have it?

19       MR. BRYAN:  I do not, your Honor.

20       THE COURT:  Did you ever have it?

21       MR. BRYAN:  I did not, your Honor.

22       THE COURT:  The government doesn't have it.  I don't

23   know the date.  I said January 9th because that was the R and

24   R.  December 19th was one of them.  It is two transcripts of

25   the 19th, a hundred pages.  On January 2nd the minutes say

1  evidentiary hearing held.  Edward Steel continued his

2  testimony.  There was a stipulation and argument.  But the

3  record doesn't reflect that there is a transcript.

4           MR. VILA:  Judge, I'm sorry, I left that transcript in

5  a box in my car with the rest of my material.  I thought for

6  some reason I had it in my motion to suppress book.  But I

7  don't.  You want me to get it now?

8           MR. VILA:  Yes.

9           THE COURT:  When do you want to do it?

10          MR. VILA:  I'll get it right now.

11          THE COURT:  How far is your car?

12          MR. VILA:  It's down the street.

13                [There was a short recess].

14          THE COURT:  We are back on the record.  What do you

15  think happened with this transcript?  I am now being given a

16  transcript of January 2nd.  Do you know what happened?  You

17  have no idea, I take it?

18          MR. VILA:  Why the transcript didn't get filed?

19          THE COURT:  Judge, I don't know.

20          THE COURT:  Why doesn't the government have it?

21          MR. BRYAN:  Your Honor, we did not order the second

22  transcript.

23          THE COURT:  And you did order the second transcript?

24          MR. VILA:  I did order the transcript.

25          THE COURT:  And the court reporter didn't file it?

1   You want to say anything regarding this?

2            MR. VILA:  Yes.

3            THE COURT:  Where were you on Tuesday's calendar call?

4            MR. VILA:  I was informed about the calendar call by

5   Nathan Diamond.  I had him stand in for me.  I had no idea the

6   court was going to have questions for me regarding the motions.

7            THE COURT:  I understand that.  But it is always

8   better to be here on a calendar call.  Instead of doing this

9   today, I would have done it then.

10            MR. VILA:  I understand, Judge.  I apologize.

11            THE COURT:  So what do you want to say?

12            MR. VILA:  Judge, I felt so strongly about this issue.

13   I went out and hired an appellate lawyer, Mr. Berger, who

14   helped me on the motion and was present on the motion to

15   suppress.  This is a motion that should have been granted.

16            THE COURT:  You win some, you lose some.

17            MR. VILA:  I understand.  I litigated cases in front

18   of Judge Simonton before.  I may have never disagreed with her

19   decisions but I accepted it.  This one I do not accept.

20            THE COURT:  You may not have a choice.  Sometimes you

21   have to accept things you don't like.  And that's why there is

22   me in between and three wiser judges in Atlanta.

23            How about legally, if you tell me the issues.

24            MR. VILA:  Judge, the first issue was a protective

25   sweep.  Judge Simonton felt that the agents were allowed to do

1  a protective sweep.

2        THE COURT:  What's my standard of review?  For me to

3  reverse and not accept what Judge Simonton had done I would

4  have to actually -- did she make findings of fact?

5        MR. VILA:  Yes, she did.

6        THE COURT:  She made credibility decisions?

7        MR. VILA:  Yes, she did, Judge.

8        THE COURT:  What can I do about that.  In order for me

9  to reject those credibility decisions what do I have to do?

10        MR. VILA:  Judge, even accepting the findings of fact

11  and credibility issues by judge Simonton, legally the decision

12  was still incorrect.

13        THE COURT:  Why?

14        MR. VILA:  Michigan vs. Long, the U.S. Supreme Court

15  held that the allegations were limited to a search of the

16  automobile and also any areas where the passenger could have

17  reached for a weapon.

18        Secondly, under the Michigan vs. Long the Supreme

19  Court said that there had to be a reasonable belief that the

20  person or the driver was armed and dangerous.  We don't have

21  that.  We don't have that in those facts held by Judge

22  Simonton.  There is absolutely nothing to infer that

23  Ms. Castellanos was dangerous or was armed.  As a matter of

24  fact, Judge --

25        THE COURT:  She also found that there was probable

 1    cause independent of that, didn't she?

 2              MR. VILA:  Yes, she did, Judge.

 3              THE COURT:  That kind of settles it, doesn't it?

 4              MR. VILA:  Well, Judge, the court -- it is a Supreme

 5    Court, the Henry case.  The facts are very similar to our case.

 6    There is absolutely no probable cause.  We can see they might

 7    have known and there probably was particular suspicion but

 8    there is no probable cause.

 9              Basically they had said there could have been weapons,

10    either weapons, guns or money in the bags that were facing the

11    Expedition.  That's not probable cause.  That is articulable

12    suspicion.  I think in probable cause you need some degree of

13    certainty.  Basically arguing that there could have been

14    weapons, guns or maybe money.  That's reasonable suspicion.

15              THE COURT:  Well, I need to read this transcript.

16    It's mostly argument towards the end.  A lot of questioning on

17    the notes and things of that nature.  And it's not a very

18    lengthy transcript.  It's 40 pages.  I read the other hundred

19    pages of December 19th.

20              Let me read that and I will tell you what my ruling is

21    before we swear in the jurors.

22              MR. VILA:  Your Honor, I could also have Mr. Berger,

23    who really is the appellate lawyer, come in and argue it.

24              THE COURT:  I don't think that's necessary.  He argued

25    before.  I saw it.  I was just skimming it.  Didn't he?

1          MR. VILA:  Yes, he did, briefly.

2          THE COURT:  I suspect he would probably say the same

3    thing he told Judge Simonton.

4          MR. VILA:  I'm the one that argued.

5          THE COURT:  But he did some of it.

6          MR. VILA:  It was little.

7          THE COURT:  I was looking at it right now.  And it

8    said Mr. Berger.  He's on pages 18, 19, 20, and 21.

9          Then you gave your closing argument, basically.  And I

10   understand that.  And so actually we are talking about 20

11   pages.  If you take away all the indication of the notes, I'll

12   be able to do it while we have a little recess.  Maybe when we

13   have the extension chord recess I will review that and we will

14   figure everything out regarding that.  But if I adopt the

15   magistrate's report and recommendation we will proceed.

16         In order for me not to adopt the magistrate's report

17   and recommendation unless you are saying that she erred as a

18   matter of law.  Is that what you are telling me now, that she

19   made mistakes on credibility?  Did she make mistakes on

20   credibility?

21         MR. VILA:  No, Judge.  I'm saying that taking the

22   facts, the findings of fact and credibility by Judge Simonton,

23   legally the decision and her recommendation is incorrect.

24         THE COURT:  Because there was no probable cause and

25   because they didn't have the right to go as far as they did in

1    your view?

2              MR. VILA:  That's correct.

3              THE COURT:  In searching the Expedition.

4              MR. VILA:  The back.  They went all the way to the

5    back area and that's where the bags were at.  In between the

6    back area and the driver passenger side there is also another

7    row.  In that row there was a five year old and a one year old.

8              THE COURT:  I thought it was a four year old?

9              MR. VILA:  Four or five.

10             THE COURT:  So what were they supposed to do?

11             MR. VILA:  They could have access to a K-9.  They

12   could have done a K-9 sniff.  They could have placed a

13   detainer.

14             THE COURT:  That was okay?  Constitutionally obviously

15   I'm talking about.

16             MR. VILA:  Yes.  And I think they could have done a

17   search warrant.

18             THE COURT:  So you could detain someone, put her in

19   handcuffs, get the dog, sniff the car, search what part of the

20   car, the front?

21             MR. VILA:  The front compartment.

22             THE COURT:  You could open the glove compartment?

23             MR. VILA:  Yes.

24             THE COURT:  But you can't go to the rear and open the

25   cargo area.  Was it hidden or was it outside in the cargo?

1   This is in a big Expedition?

2         MR. VILA:  A big SUV.

3         THE COURT:  It was in the back area.

4         THE COURT:  But not hidden.

5         MR. VILA:  No, Judge, it was not.  There were bags

6   that were closed.

7         THE COURT:  So the question is whether under these

8   facts, which are not contested, law enforcement agents with the

9   information that they had, including the search warrant of the

10  home.

11        MR. VILA:  That was done after.

12        THE COURT:  But with the information that they had

13  whether they could seize those bags.

14        MR. VILA:  That's right, Judge.

15        THE COURT:  You are saying no.  The reason is that the

16  Supreme Court decision that you mentioned?

17        MR. VILA:  This is Michigan vs. Long.  And then

18  dealing with the probable cause issue, it's the Henry case,

19  Judge.  It's a short case.

20        THE COURT:  Believe it or not, I even read long cases.

21  You would be surprised.

22        Does the government wish to say anything in response?

23  You didn't want to write anything in response to what you told

24  me on the calendar call.

25        MR. BRYAN:  Judge, we would rely on the magistrate's

1   report and recommendation, your Honor.

2          MR. VILA:  Judge, there is also another motion that

3   has not been ruled by the court.  That is a motion to sever.

4          THE COURT:  Why should I sever this case?  They are

5   charged together.

6          MR. VILA:  They are charged together.

7          THE COURT:  The law says people who are charged with a

8   conspiracy should be tried together if they are charged

9   together, right?

10         MR. VILA:  That's correct, Judge.

11         THE COURT:  Spillover prejudice?

12         MR. VILA:  That's it.  Home invasion.

13         THE COURT:  Did you ever read United States vs.

14   Alvarez?

15         MR. VILA:  No.

16         THE COURT:  I want you to read that.  It had to do

17   with severance spillover.  There was a case that involved --

18   the reason I remember it so well is I was the trial lawyer.

19   That's how far back it was.  But a couple of the defendants

20   were charged with murder of an agent, a government agent, a

21   case before Judge King.  The other defendants were charged with

22   drug dealing.  An agent was killed.  The drug dealing defendant

23   moved for severance.  I want to simplify it.

24         The judge denied it and the appellate court affirmed.

25   It's a murder.  A murder of an agent.  The defendant Rios, who

1    happened to have the same name as the agent, moved for

2    severance and the Court of Appeals said we affirm the trial

3    court.

4           What do you think about that?  Does that seem to you

5    more prejudicial than this case?  If not, tell me how?

6           MR. VILA:  Judge, a homicide is a homicide.

7           THE COURT:  That was murder of an agent in 1980.

8    Miami Vice days.

9           MR. VILA:  We had allegation of murder, witnesses.

10          THE COURT:  And they say your client is involved with

11   murder?

12          MR. VILA:  No.

13          THE COURT:  So the jurors will know she had nothing to

14   do with that.  Or robberies, right?

15          MR. VILA:  Judge, I really feel that that kind of

16   information and evidence even it's going to prevent the jurors,

17   even with an instruction from the court, to set that aside.

18   This case, how it will influence them at the time they

19   deliberate and decide.

20          THE COURT:  What is the best case for you?

21          MR. VILA:  It's Zafiro vs. United States.

22          THE COURT:  Justice Connor's case.  What did she say

23   when she wrote that opinion?

24          MR. VILA:  Judge, I don't have that case with me.

25          THE COURT:  And they reversed the trial court for not

1    granting a severance, is that what happened, or did they affirm

2    it?   What did they say about severance?  You want to sever it

3    you have to give me a reason why I should try this case twice,

4    right?   That's what you want me to do, right?

5              MR. VILA:  Yes, Judge.

6              THE COURT:  Before do I that I have to be pretty sure

7    don't you think?  I've done it before.

8              MR. VILA:  Judge, the other case is the 11th Circuit

9    U.S. vs. Blanchard.  Basically the reason those cases is that

10   the severance -- I'm reading from the opinion -- severance must

11   be granted where evidence is admissible against only one

12   defendant.  Only where the evidence is so convincing that not

13   even limited instructions are likely to prevent a jury from

14   considering the evidence against co-defendants.  And that's

15   what I think we have in this case.

16             THE COURT:  What say the government regarding the

17   motion for severance.  What are you going to say about Dulce

18   Castellanos?  What about the robberies, murder?

19             MR. BRYAN:  Your Honor, I guess initially the

20   government would rely additionally, in addition to the Alvarez

21   case cited by the court, there are several other opinions in

22   the 11th Circuit that indicate that defendants --

23             THE COURT:  Tell me about the facts.  I know the law.

24   Tell me the facts.  What are you going to say about Dulce

25   Castellanos and Saul Wynter regarding robberies.

1          MR. BRYAN:  Yes, your Honor.  Dulce Castellanos has

2    not been involved in robberies or any of the homicides nor

3    connected in any way, associated with the violent activity that

4    we investigated over the course of the conspiracy.

5          THE COURT:  What are you going to say about Saul

6    Wynter?

7          MR. BRYAN:  He has been intimately involved.

8          THE COURT:  What you are you going to say about Saul

9    Wynter about homicides before this jury?

10         MR. BRYAN:  Yes, your Honor, the defendant was

11   involved in demanding, if you will, the murder of an individual

12   who did not pay the defendant for drugs and thereafter -- and

13   this testimony will be elicited from one of the cooperating

14   defendants in this case, your Honor -- that the defendant sent

15   several individuals to murder the individual who did not pay

16   for the drugs and thereafter the murder was committed.  I

17   believe there are other --

18         THE COURT:  But he is not charged with murder?

19         MR. BRYAN:  No, your Honor, he is not.

20         THE COURT:  Was he ever charged with murder?

21         MR. BRYAN:  Once in the state system.

22         THE COURT:  And what happened?

23         MR. BRYAN:  He was acquitted.

24         THE COURT:  You are introducing that as part of the

25   drug case?

1        MR. BRYAN:  Just the evidence from the cooperating

2   defendant regarding the violent activity.

3        THE COURT:  When did that murder take place and who

4   was killed?  When did the murder take place?

5        MR. BRYAN:  Your Honor, the murder --

6        THE COURT:  I assume between '95 and '07?

7        MR. BRYAN:  Yes, during the course of the conspiracy.

8   I am trying to locate the exact date.

9        THE COURT:  Who is the victim?  Who is the person that

10  was killed, was it more than one?

11        MR. BRYAN:  There was more than one.

12        THE COURT:  On the same date?

13        MR. BRYAN:  No, your Honor.

14        THE COURT:  Give me a date.

15        MR. BRYAN:  In 2002 an individual by the name of John

16  Cummings, your Honor.

17        THE COURT:  John Cummings was killed by Saul Wynter

18  you are going to say?

19        MR. BRYAN:  He sent others to kill John Cummings, your

20  Honor.

21        THE COURT:  And this is when, in 2002?

22        MR. BRYAN:  2002, your Honor.

23        THE COURT:  Do you have a month or a season?

24        MR. BRYAN:  July 2002.

25        THE COURT:  What else?  A murder of whom?  Are you

1   going to tell the jurors in opening statement?

2          MR. BRYAN:  We were not, your Honor.

3          THE COURT:  You could win this case without that,

4   right?

5          MR. BRYAN:  Your Honor, the government believes this

6   is part and parcel of the drug conspiracy.

7          THE COURT:  That's why it is going to take longer.  We

8   are going to try two mini murders.  Murder of who?  Who is the

9   other person and when?

10          MR. BRYAN:  Your Honor, I could tell you the murder

11   occurred in Hollywood in 1998 and we are searching for the

12   individual.

13          THE COURT:  In May of 1998.  Saul Wynter sent other

14   people to do that, is that what you are telling me?

15          MR. BRYAN:  Yes, your Honor.

16          THE COURT:  And the person who is going to testify is

17   one of the people who did it?

18          MR. BRYAN:  No, he was present.

19          THE COURT:  The same fellow as to the 2002 or a

20   separate fellow?

21          MR. BRYAN:  No, the same individual.

22          THE COURT:  Did he testify in state court too?

23          MR. BRYAN:  No, your Honor, he was not a witness in

24   the state court trial.

25          THE COURT:  Any other murders?

```
 1              MR. BRYAN:  There is another one, your Honor, that I'm

 2    trying to locate.

 3              Your Honor, there was a third homicide in 1997.  I am

 4    trying to get the date and the name of the individual.  We have

 5    a Richard LNU.

 6              THE COURT:  Any other murders?

 7              MR. BRYAN:  I believe those are the three.

 8              THE COURT:  This will help you in closing argument,

 9    you are going to say that these murders prove which count?

10              MR. BRYAN:  The conspiracy count, your Honor.

11              THE COURT:  Because without it, they weren't just

12    dealing in drugs, they were killing for payback.  What were the

13    reason for the murders?

14              MR. BRYAN:  The individuals did not pay.

15              THE COURT:  It has nothing to do with Dulce

16    Castellanos?

17              MR. BRYAN:  No, it does not.

18              THE COURT:  Dulce Castellanos role in this case was?

19              MR. BRYAN:  She was involved in the drug conspiracy

20    and the money laundering aspects

21              THE COURT:  What did she do when you say she was

22    involved?  Was she driving around with a bag full of money.

23    Was she talking on the phone.  What was she doing?

24              MR. BRYAN:  Her role in this case, your Honor, was to

25    deliver money.  Transport money, to deliver money to persons
```

1   that were owed by the organization, and I guess that's the

2   extent.

3          THE COURT:  You would agree that the case is not very

4   strong against Dulce Castellanos or is it?

5          MR. BRYAN:  We would disagree with that, your Honor.

6          THE COURT:  It is just as strong as Saul Wynter?

7          MR. BRYAN:  Yes, your Honor.

8          THE COURT:  The last argument by defense counsel.  I

9   tell the jurors this has nothing to do with Dulce Castellanos.

10  It is clear here what the government says she did.  She

11  delivered the stuff, she had nothing to do with the murders.

12  How could that prejudice your client in the exercise of my

13  discretion if I give them a cautionary instruction similar to

14  the one that Judge King gave in United States vs. Alvarez,

15  which is 755 F.2d 830, 1985.  Why should I sever this?

16         MR. VILA:  Judge, I think the evidence is so highly

17  prejudicial.  Even with the cautionary instruction from the

18  court, the jury could not be able to block that from their mind

19  and it would influence them.

20         THE COURT:  What's the relationship between Dulce

21  Castellanos and Saul Wynter?

22         MR. VILA:  There is no relationship.

23         THE COURT:  What's the relationship according to the

24  government between Dulce Castellanos and Saul Wynter?

25         MR. BRYAN:  Your Honor, Dulce Castellanos and her

1   son-in-law dealt drugs direct with Saul Wynter and thus became

2   involved in delivering the drugs.

3           THE COURT:  And the son-in-law is William Martinez,

4   the co-defendant?

5           MR. BRYAN:  Yes, your Honor.

6           THE COURT:  Who are not here?

7           MR. BRYAN:  Yes, your Honor.

8           THE COURT:  Where are they?

9           MR. BRYAN:  They are fugitives at this point.  We do

10   not know where they are.

11           THE COURT:  Anything that Saul Wynter's lawyers want

12   to say?

13           MR. FLYNN:  Judge, at the appropriate time the

14   government attempts to introduce this evidence we may well be

15   objecting.

16           THE COURT:  What could you tell me now?

17           MR. FLYNN:  We will be objecting under rule 403 that

18   any relevance is going to be outweighed by the prejudice.  At

19   least in the case in chief.

20           THE COURT:  It is directly linked to drugs the

21   government says.  We are not talking about murders like if you

22   killed a relative or there was a triangle or a robbery of a

23   7-eleven, it is part of the drug business, that's what the

24   government says, right?

25           MR. BRYAN:  Yes, your Honor.

1           MR. FLYNN:   That would depend upon the proof.

2           THE COURT:   That's why you cross examine.   You think

3    they are lying about that?

4           MR. FLYNN:   No, your Honor, the first hurdle is to

5    prove that it is connected with this specific conspiracy

6    charge.   Not with other crimes.   It has to be related to this

7    conspiracy or it's clearly irrelevant.

8           THE COURT:   How is it related to this conspiracy?

9           MR. BRYAN:   Your Honor, during the time frames that

10   the murders were being committed the defendant was actively

11   participating in drug activity with William Martinez, Martin

12   Castellanos and the other co-defendants who are going to

13   testify on that point.

14          THE COURT:   There is only one drug conspiracy?

15          MR. BRYAN:   Yes, your Honor.   Because the defendant --

16          THE COURT:   Don't mention the murders during opening

17   statement.   Since we are talking about 403 balancing test, let

18   me hear what you all have to say in opening statement.   It

19   gives me a better flavor for the case.

20          So I will deny the motion for severance now.   We will

21   see what happens.   Anything else?

22          MR. VILA:   No, your Honor.

23          THE COURT:   Ready for the jurors?

24          MR. VILA:   Yes.

25          THE COURT:   Bring them in, Shirley.

1          [The jury enters the courtroom at 10:49 a.m.].

2          *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2          I hereby certify that the foregoing is an accurate

3     transcription of proceedings in the above-entitled matter.

4

5     _____          _____s/Larry Herr_____

          DATE                  LARRY HERR, RPR-CM-RMR-FCRSC

6                               Official United States Court Reporter

                                400 N. Miami Avenue

7                               Miami, FL  33128 - 305/523-5290

                                           (Fax) 305/523-5639

8                                email:  Lindsay165@aol.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**able** 9:12 19:18
**about** 3:21 4:3 6:4
  6:12,23 7:8 9:10
  10:15 13:4 14:2,17
  14:18,23,24 15:5,8
  15:9 20:21 21:3,17
**above-entitled** 23:3
**absolutely** 7:22 8:6
**accept** 6:19,21 7:3
**accepted** 6:19
**accepting** 7:10
**access** 10:11
**according** 19:23
**accurate** 23:2
**acquitted** 15:23
**actively** 21:10
**activity** 15:3 16:2
  21:11
**actually** 7:4 9:10
**addition** 14:20
**additionally** 14:20
**admissible** 14:11
**adopt** 9:14,16
**affirm** 13:2 14:1
**affirmed** 12:24
**after** 11:11
**against** 14:11,14
  19:4
**agent** 3:8 12:20,20
  12:22,25 13:1,7
**agents** 6:25 11:8
**agree** 19:3
**allegation** 13:9
**allegations** 7:15
**allowed** 6:25
**Alvarez** 12:14 14:20
  19:14
**always** 6:7
**America** 1:4 3:3,6
**another** 10:6 12:2
  18:1
**anything** 6:1 11:22
  11:23 20:11 21:21
**apologize** 6:10
**Appeals** 13:2
**APPEARANCES**
  1:13
**appellate** 6:13 8:23
  12:24
**appropriate** 20:13
**area** 10:5,6,25 11:3
**areas** 7:16
**argue** 8:23
**argued** 8:24 9:4
**arguing** 8:13
**argument** 5:2 8:16
  9:9 18:8 19:8 19:8
**armed** 7:20,23
**around** 18:22
**articulable** 8:11
**aside** 13:17
**aspects** 18:20
**Assistant** 3:7

**associated** 15:3
**assume** 16:6
**Atlanta** 6:22
**attempts** 20:14
**Attorney** 3:7
**automobile** 7:16
**Avenue** 1:24 23:6
**away** 9:11
**a.m** 22:11
**A.U.S.A** 1:16,16

**B**

**back** 5:14 10:4,5,6
  11:3 12:19
**bag** 18:22
**bags** 8:10 10:5 11:5
  11:13
**balancing** 21:17
**basically** 8:9,13 9:9
  14:9
**became** 20:1
**before** 1:12 3:23
  6:18 8:21,25 12:21
  14:6,7 15:9
**behalf** 3:4,6,9,11,12
  3:15
**being** 5:15 21:10
**belief** 7:19
**believe** 11:20 15:17
  18:7
**believes** 17:5
**Berger** 6:13 8:22 9:8
**best** 13:20
**better** 6:8 21:19
**between** 6:22 10:5
  16:6 19:20,24
**big** 11:1,2
**Blanchard** 14:9
**block** 19:18
**book** 5:6
**box** 5:5
**Brad** 3:8
**briefly** 9:1
**Bring** 21:25
**Bryan** 1:16 3:5,5
  4:19,21 5:21 11:25
  14:19 15:1,7,10,19
  15:21,23 16:1,5,7
  16:11,13,15,19,22
  16:24 17:2,5,10,15
  17:18,21,23 18:1,7
  18:10,14,17,19,24
  19:5,7,25 20:5,7,9
  20:25 21:9,15
**business** 20:23

**C**

**C** 23:1,1
**calendar** 3:17 6:3,4
  6:8 11:24
**call** 3:17 6:3,4,8
  11:24
**car** 5:5,11 10:19,20
**cargo** 10:25,25

**case** 1:3 3:8 8:5,5
  11:18,19 12:4,17
  12:21 13:5,18,20
  13:22,24 14:3,8,15
  14:21 15:14,25
  17:3 18:18,24 19:3
  20:19 21:19
**cases** 6:17 11:20
  14:9
**Castellanos** 1:8,21
  3:4,12,15 7:23
  14:18,25 15:1
  18:16,18 19:4,9,21
  19:24,25 21:12
**cause** 8:1,6,8,11,12
  9:24 11:18
**cautionary** 19:13,17
**certainty** 8:13
**Certificate** 2:3
**certify** 23:2
**charge** 21:6
**charged** 12:5,6,7,8
  12:20,21 15:18,20
**chat** 3:18
**chief** 20:19
**choice** 6:20
**chord** 9:13
**Circuit** 14:8,22
**CITATION** 2:10
**cited** 14:21
**clear** 19:10
**clearly** 21:7
**client** 3:18 13:10
  19:12
**closed** 11:6
**closing** 9:9 18:8
**come** 3:16 8:23
**committed** 15:16
  21:10
**compartment** 10:21
  10:22
**CONFERENCE**
  2:13
**connected** 15:3 21:5
**Connor's** 13:22
**considering** 14:14
**conspiracy** 12:8 15:4
  16:7 17:6 18:10,19
  21:5,7,8,14
**Constitutionally**
  10:14
**CONTENTS** 2:1
**contested** 11:8
**continued** 5:1
**convincing** 14:12
**cooperating** 15:13
  16:1
**correct** 10:2 12:10
**counsel** 3:6 19:8
**count** 18:9,10
**couple** 12:19
**course** 15:4 16:7
**court** 1:1,23 3:3,9,12
  3:15,16,21,25 4:3

  4:6,8,10,13,17,18
  4:20,22 5:9,11,14
  5:19,20,23,25,25
  6:3,6,7,11,16,20
  7:2,6,8,13,14,19
  7:25 8:3,4,5,15,24
  9:2,5,7,24 10:3,22
  10:10,14,18,22,24
  11:3,4,7,12,15,16
  11:20 12:3,4,7,11
  12:13,16,24 13:2,3
  13:7,10,13,17,20
  13:22,25,25 14:6
  14:16,21,23 15:5,8
  15:18,20,22,24
  16:3,6,9,12,14,17
  16:21,23,25 17:3,7
  17:13,16,19,22,22
  17:24,25 18:6,8,11
  18:15,18,21 19:3,6
  19:8,18,20,23 20:3
  20:6,8,11,16,20
  21:2,8,14,16,23,25
  23:6
**courtroom** 22:1
**co-defendant** 20:4
**co-defendants** 14:14
  21:12
**credibility** 7:6,9,11
  9:19,20,22
**crimes** 21:6
**cross** 21:2
**Cummings** 16:16,17
  16:19

**D**

**dangerous** 7:20,23
**date** 4:23 16:8,12,14
  18:4 23:5
**days** 13:8
**DEA** 3:8
**dealing** 11:18 12:22
  12:22 18:12
**dealt** 20:1
**December** 4:24 8:19
**decide** 13:19
**decision** 7:11 9:23
  11:16
**decisions** 6:19 7:6,9
**defendant** 1:19,21
  12:22,25 14:12
  15:10,12,14 16:2
  21:10,15
**defendants** 1:9
  12:19,21 14:22
  15:14
**defense** 19:8
**degree** 8:12
**deliberate** 13:19
**deliver** 18:25,25
**delivered** 19:11
**delivering** 20:2
**demanding** 15:11
**denied** 12:24

**deny** 21:20
**depend** 21:1
**Description** 2:7
**Descriptions** 2:14
**detain** 10:18
**detainer** 10:13
**Diamond** 3:11 6:5
**direct** 20:1
**directly** 20:20
**disagree** 19:5
**disagreed** 6:18
**discretion** 19:13
**DISTRICT** 1:1,1,12
**DIVISION** 1:2
**dog** 10:19
**doing** 6:8 18:23
**done** 6:9 7:3 10:12
  10:16 11:11 14:7
**down** 5:12
**driver** 7:20 10:6
**driving** 18:22
**drug** 12:22,22 15:25
  17:6 18:19 20:23
  21:11,14
**drugs** 15:12,16
  18:12 20:1,2,20
**Dulce** 1:7 3:4,12,15
  14:17,24 15:1
  18:15,18 19:4,9,20
  19:24,25
**during** 16:7 21:9,16

**E**

**E** 23:1,1
**Edward** 5:1
**either** 8:10
**elicited** 15:13
**email** 23:8
**end** 8:16
**enforcement** 11:8
**enters** 22:1
**erred** 9:17
**ESQ** 1:19,21
**even** 7:10 11:20
  13:16,17 14:13
  19:17
**ever** 4:20 12:13
  15:20
**everything** 9:14
**evidence** 2:6 13:16
  14:11,12,14 16:1
  19:16 20:14
**evidentiary** 5:1
**exact** 16:8
**examine** 21:2
**except** 4:1
**exercise** 19:12
**Exhibits** 2:5,6
**Expedition** 8:11 10:3
  11:1
**extension** 9:13
**extent** 19:2

**F**

**F** 23:1
**facing** 8:10
**fact** 7:4,10,24 9:22
**facts** 7:21 8:5 9:22
   11:8 14:23,24
**far** 5:11 9:25 12:19
**Fax** 23:7
**FEBRUARY** 1:7
**Federal** 1:23
**FEDERICO** 1:12
**feel** 13:15
**fellow** 17:19,20
**felt** 6:12,25
**figure** 9:14
**file** 5:25
**filed** 3:25 4:2,12 5:18
**findings** 7:4,10 9:22
**first** 6:24 21:4
**five** 10:7,9
**FL** 1:17,24 23:7
**flavor** 21:19
**FLORIDA** 1:1,6
**Flynn** 1:19 3:10,10
   20:13,17 21:1,4
**foregoing** 23:2
**forward** 3:16
**found** 7:25
**four** 10:8,9
**frames** 21:9
**from** 3:8 13:17 14:10
   14:13 15:13 16:1
   19:17,18
**front** 6:17 10:20,21
**fugitives** 20:9
**full** 18:22
**F.2d** 19:15

**G**

**gave** 9:9 19:14
**George** 1:21 3:14
**give** 14:3 16:14
   19:13
**given** 5:15
**gives** 21:19
**glove** 10:22
**go** 9:25 10:24
**going** 6:6 13:16
   14:17,24 15:5,8
   16:18 17:1,7,8,16
   18:9 20:18 21:12
**Good** 3:5,10,14
**government** 1:15 3:4
   4:18,22 5:20 11:22
   12:20 14:16,20
   17:5 19:10,24
   20:14,21,24
**granted** 6:15 14:11
**granting** 14:1
**guess** 14:19 19:1
**guns** 8:10,14

**H**

**handcuffs** 10:19
**happened** 3:22 5:15

**5:16** 13:1 14:1
   15:22
**happens** 21:21
**hear** 21:18
**hearing** 3:22 5:1
**held** 5:1 7:15,21
**help** 18:8
**helped** 6:14
**Henry** 8:5 11:18
**her** 6:18 9:23 10:18
   18:24 19:25
**Herr** 1:23 23:5,5
**hidden** 10:25 11:4
**highly** 19:16
**him** 6:5
**hired** 6:13
**Hollywood** 17:11
**home** 11:10 12:12
**homicide** 13:6,6 18:3
**homicides** 15:2,9
**Honor** 3:5,10,14,20
   4:9,19,21 5:21
   8:22 12:1 14:19
   15:1,10,14,19 16:5
   16:13,16,20,22
   17:2,5,10,15,23
   18:1,3,10,24 19:5
   19:7,25 20:5,7,25
   21:4,9,15,22
**HONORABLE** 1:12
**hundred** 4:25 8:18
**hurdle** 21:4

**I**

**idea** 5:17 6:5
**Identification** 2:6
**including** 11:9
**incorrect** 7:12 9:23
**independent** 8:1
**INDEX** 2:5,10,13
**indicate** 14:22
**indication** 9:11
**individual** 15:11,15
   16:15 17:12,21
   18:4
**individuals** 15:15
   18:14
**infer** 7:22
**influence** 13:18
   19:19
**information** 11:9,12
   13:16
**informed** 6:4
**initially** 14:19
**Instead** 6:8
**instruction** 13:17
   19:13,17
**instructions** 14:13
**interpreter** 3:19
**intimately** 15:7
**introduce** 20:14
**introducing** 15:24
**invasion** 12:12
**investigated** 15:4

**involved** 12:17 13:10
   15:2,7,11 18:19,22
   20:2
**irrelevant** 21:7
**issue** 6:12,24 11:18
**issues** 6:23 7:11

**J**

**January** 3:22 4:5,7
   4:13,14,15,23,25
   5:16
**John** 16:15,17,19
**judge** 1:12 3:24 4:16
   5:4,19 6:10,12,18
   6:24,25 7:3,7,10
   7:11,21,24 8:2,4
   9:3,21,22 11:5,14
   11:19,25 12:2,10
   12:21,24 13:6,15
   13:24 14:5,8 19:14
   19:16 20:13
**judges** 6:22
**July** 16:24
**jurors** 8:21 13:13,16
   17:1 19:9 21:23
**jury** 14:13 15:9
   19:18 22:1
**just** 8:25 16:1 18:11
   19:6
**Justice** 13:22

**K**

**kill** 16:19
**killed** 12:22 16:4,10
   16:17 20:22
**killing** 18:12
**kind** 8:3 13:15
**King** 12:21 19:14
**know** 4:23 5:16,19
   13:13 14:23 20:10
**known** 8:7
**K-9** 10:11,12

**L**

**LARRY** 1:23 23:5
**last** 4:2,3,4,5 19:8
**laundering** 18:20
**law** 9:18 11:8 12:7
   14:23
**lawyer** 6:13 8:23
   12:18
**lawyers** 20:11
**least** 20:19
**lectern** 3:16
**left** 5:4
**legally** 6:23 7:11
   9:23
**lengthy** 8:18
**let** 8:20 21:17
**like** 6:21 20:21
**likely** 14:13
**limited** 7:15 14:13
**Lindsay165@aol.c...**
   23:8

**Line** 2:7,7
**linked** 20:20
**litigated** 6:17
**little** 9:6,12
**LNU** 18:5
**locate** 16:8 18:2
**long** 7:14,18 11:17
   11:20
**longer** 17:7
**Look** 4:8
**looking** 9:7
**lose** 6:16
**lot** 8:16
**lying** 21:3

**M**

**made** 7:6 9:19
**magistrate** 3:23
**magistrate's** 9:15,16
   11:25
**make** 7:4 9:19
**Marked** 2:6
**Martin** 21:11
**Martinez** 20:3 21:11
**material** 5:5
**matter** 7:23 9:18
   23:3
**may** 6:18,20 17:13
   20:14
**maybe** 4:1 8:14 9:12
**mention** 21:16
**mentioned** 11:16
**Miami** 1:2,6,17,24
   1:24 13:8 23:6,7
**Michigan** 7:14,18
   11:17
**might** 8:6
**mind** 19:18
**mini** 17:8
**minutes** 4:25
**mistakes** 9:19,19
**money** 8:10,14 18:20
   18:22,25,25,25
**month** 16:23
**more** 13:5 16:10,11
**MORENO** 1:12
**morning** 3:5,10,14
**mostly** 8:16
**motion** 1:11 5:6 6:14
   6:14,15 12:2,3
   14:17 21:20
**motions** 6:6
**moved** 12:23 13:1
**murder** 12:20,25,25
   13:7,9,11 14:18
   15:11,15,16,18,20
   16:3,4,5,25 17:8
   17:10
**murders** 17:8,25
   18:6,9,13 19:11
   20:21 21:10,16
**must** 14:10

**N**

**N** 23:6
**name** 13:1 16:15
   18:4
**Nathan** 3:11 6:5
**nature** 8:17
**necessary** 8:24
**need** 8:12,15
**needs** 3:19
**never** 6:18
**North** 1:24
**notes** 8:17 9:11
**nothing** 7:22 13:13
   18:15 19:9,11
**N.E** 1:17

**O**

**objecting** 20:15,17
**objections** 4:8
**obviously** 10:14
**occurred** 11:14
**Official** 1:23 23:6
**okay** 10:14
**old** 10:7,7,8
**Once** 15:21
**one** 3:18 4:2,3,3,4,5
   4:24 6:19 9:4 10:7
   14:11 15:13 16:10
   16:11 17:17 18:1
   19:14 21:14
**only** 3:18 14:11,12
   21:14
**open** 10:22,24
**opening** 17:1 21:16
   21:18
**opinion** 13:23 14:10
**opinions** 14:21
**order** 4:14 5:21,23
   5:24 7:8 9:16
**organization** 19:1
**Osborne** 1:16 3:7
**other** 8:18 12:21
   14:8,21 15:17 17:9
   17:13,25 18:6 21:6
   21:12
**others** 16:19
**out** 6:13 9:14
**outside** 10:25
**outweighed** 20:18
**over** 15:4
**owed** 19:1

**P**

**page** 2:2,7,7,11,14
   4:9,10
**pages** 4:25 8:18,19
   9:8,11
**parcel** 17:6
**part** 10:19 15:24
   17:6 20:23
**participating** 21:11
**particular** 8:7
**passenger** 7:16 10:6
**pay** 15:12,15 18:14
**payback** 18:12

**people** 12:7 17:14,17
**person** 7:20 16:9
  17:9,16
**persons** 18:25
**phone** 18:23
**place** 16:3,4
**placed** 10:12
**Plaintiff** 1:5
**please** 3:17
**point** 20:9 21:13
**prejudice** 12:11
  19:12 20:18
**prejudicial** 13:5
  19:17
**present** 3:15 6:14
  17:18
**pretty** 14:6
**prevent** 13:16 14:13
**probable** 7:25 8:6,8
  8:11,12 9:24 11:18
**probably** 8:7 9:2
**proceed** 9:15
**proceedings** 23:3
**proof** 21:1
**protective** 6:24 7:1
**prove** 18:9 21:5
**put** 10:18

**Q**

**question** 11:7
**questioning** 8:16
**questions** 6:6

**R**

**R** 4:23,24 23:1
**reached** 7:17
**read** 8:15,18,20
  11:20 12:13,16
**reading** 14:10
**Ready** 21:23
**really** 8:23 13:15
**rear** 10:24
**reason** 5:6 11:15
  12:18 14:3,9 18:13
**reasonable** 7:19 8:14
**receive** 4:17
**Received** 2:6
**recess** 5:13 9:12,13
**recommendation**
  4:11 9:15,17,23
  12:1
**record** 5:3,14
**reflect** 5:3
**regarding** 3:18 6:1,6
  9:14 14:16,25 16:2
**reject** 7:9
**related** 21:6,8
**relationship** 19:20
  19:22,23
**relative** 20:22
**relevance** 20:18
**rely** 11:25 14:20
**remember** 12:18
**report** 4:11 9:15,16

**12:1
**REPORTED** 1:23
**reporter** 1:23 5:25
  23:6
**Reporter's** 2:3
**response** 11:22,23
**rest** 5:5
**reverse** 7:3
**reversed** 13:25
**review** 7:2 9:13
**Richard** 18:5
**right** 3:19 5:10 9:7
  9:25 11:14 12:9
  13:14 14:4,4 17:4
  20:24
**Rios** 12:25
**robberies** 13:14
  14:18,25 15:2
**robbery** 20:22
**role** 18:18,24
**Room** 1:24
**row** 10:7,7
**RPR-CM-FCRR-...**
  1:23
**RPR-CM-RMR-F...**
  23:5
**rule** 20:17
**ruled** 12:3
**ruling** 8:20

**S**

**same** 9:2 13:1 16:12
  17:19,21
**Saul** 1:7 3:3,9 14:25
  15:5,8 16:17 17:13
  19:6,21,24 20:1,11
**saw** 8:25
**saying** 9:17,21 11:15
**says** 12:7 19:10
  20:21,24
**search** 7:15 10:17,19
  11:9
**searching** 10:3 17:11
**season** 16:23
**second** 5:21,23
**Secondly** 7:18
**see** 8:6 21:21
**seem** 13:4
**seize** 11:13
**sent** 15:14 16:19
  17:13
**separate** 17:20
**set** 13:17
**settles** 8:3
**sever** 1:11 12:3,4
  14:2 19:15
**several** 14:21 15:15
**severance** 12:17,23
  13:2 14:1,2,10,10
  14:17 21:20
**Shirley** 21:25
**short** 5:13 11:19
**side** 10:6
**SIDE-BAR** 2:13

**similar** 8:5 19:13
**Simonton** 6:18,25
  7:3,11,22 9:3,22
**simplify** 12:23
**Since** 21:17
**skimming** 8:25
**Smith** 3:8
**sniff** 10:12,19
**some** 5:6 6:16,16
  8:12 9:5
**someone** 3:17 10:18
**Sometimes** 6:20
**son-in-law** 20:1,3
**sorry** 5:4
**SOUTHERN** 1:1
**specific** 21:5
**spillover** 12:11,17
**stand** 6:5
**standard** 7:2
**state** 15:21 17:22,24
**statement** 17:1
  21:17,18
**States** 1:1,4,12 3:3,6
  3:7 12:13 13:21
  19:14 23:6
**Steel** 5:1
**still** 7:12
**stipulation** 5:2
**stood** 3:17
**street** 1:17 5:12
**strong** 19:4,6
**strongly** 6:12
**stuff** 19:11
**supposed** 10:10
**suppress** 5:6 6:15
**suppression** 3:21
**Supreme** 7:14,18 8:4
  11:16
**sure** 14:6
**surprised** 11:21
**Susan** 1:16 3:7
**suspect** 9:2
**suspicion** 8:7,12,14
**SUV** 11:2
**swear** 8:21
**sweep** 6:25 7:1
**system** 15:21
**s/Larry** 23:5

**T**

**T** 23:1,1
**table** 2:1 3:7
**take** 3:19 5:17 9:11
  16:3,4 17:7
**taking** 9:21
**talk** 3:21
**talking** 4:3 9:10
  10:15 18:23 20:21
  21:17
**tell** 6:23 8:20 13:5
  14:23,24 17:1,10
  19:9 20:16
**telling** 9:18 17:14
**test** 21:17

**testify** 17:16,22
  21:13
**testimony** 5:2 15:13
**their** 19:18
**thing** 9:3
**things** 6:21 8:17
**think** 4:1,7 5:15 8:12
  8:24 10:16 13:4
  14:7,15 19:16 21:2
**third** 18:3
**thought** 5:5 10:8
**three** 6:22 18:7
**time** 13:18 20:13
  21:9
**today** 6:9
**together** 12:5,6,8,9
**told** 9:3 11:23
**towards** 8:16
**transcript** 1:11 3:22
  4:13,14,15 5:18
  5:15,16,18,22,23
  5:24 8:15,18
**transcription** 23:3
**transcripts** 4:1,24
**Transport** 18:25
**trial** 12:18 13:2,25
  17:24
**triangle** 20:22
**tried** 12:8
**try** 14:3 17:8
**trying** 16:8 18:2,4
**Tuesday's** 6:3
**twice** 14:3
**two** 4:24 17:8

**U**

**under** 7:18 11:7
  20:17
**understand** 6:7,10
  6:17 9:10
**United** 1:1,4,12 3:3,6
  3:7 12:13 13:21
  19:14 23:6
**unless** 9:17
**U.S** 7:14 14:9

**V**

**very** 8:5,17 19:3
**Vice** 13:8
**victim** 16:9
**view** 10:1
**Vila** 1:21 3:14,14,16
  3:20,24 4:1,5,7,9
  4:11,16 5:4,8,10
  5:12,18,24 6:2,4
  6:10,12,17,24 7:5
  7:7,10,14 8:2,4,22
  9:1,4,6,21 10:2,4,9
  10:11,16,21,23
  11:2,5,11,14,17
  12:2,6,10,12,15
  13:6,9,12,15,21,24
  14:5,8 19:16,22
  21:22,24

**Vincent** 1:19 3:10
**violent** 15:3 16:2
**vs** 1:6 3:3 7:14,18
  11:17 12:13 13:21
  14:9 19:14

**W**

**want** 5:7,9 6:1,11
  11:23 12:16,23
  14:2,4 20:11
**wanted** 3:18,21
**warrant** 10:17 11:9
**way** 10:4 15:3
**weapon** 7:17
**weapons** 8:9,10,14
**well** 8:4,15 12:18
  20:14
**went** 6:13 10:4
**were** 6:3,25 7:15
  8:10 10:5,10 11:5
  11:6 12:20,21 17:2
  18:12,12 19:1
  21:10
**weren't** 18:11
**while** 9:12
**William** 1:16 3:5
  20:3 21:11
**win** 6:16 17:3
**wiser** 6:22
**wish** 11:22
**witness** 17:23
**witnesses** 13:9
**write** 11:23
**wrote** 13:23
**Wynter** 1:7,20 3:3,9
  3:11 14:25 15:6,9
  16:17 17:13 19:6
  19:21,24 20:1
**Wynter's** 20:11

**Y**

**year** 10:7,7,8

**Z**

**Zafiro** 13:21

**0**

**07** 16:6
**07-20772-CR-FAM**
  1:3

**1**

**1** 4:10
**10:49** 22:1
**11th** 14:8,22
**18** 9:8
**19** 9:8
**19th** 4:24,25 8:19
**1980** 13:7
**1985** 19:15
**1997** 18:3
**1998** 17:11,13

**2**

**2nd** 4:7,13,14,15,25
   5:16
**20** 9:8,10
**2002** 16:15,21,22,24
   17:19
**2004** 1:7
**21** 9:8

---
**3**

**305/523-5290** 23:7
**305/523-5598** 1:25
**305/523-5639** 23:7
**305/961-9337** 1:17
**33128** 1:24 23:7
**33132** 1:17

---
**4**

**4** 1:7
**4th** 1:17
**40** 8:18
**400** 1:24 23:6
**403** 20:17 21:17

---
**7**

**7-eleven** 20:23
**755** 19:15

---
**8**

**8N09** 1:24
**830** 19:15

---
**9**

**9th** 4:6,23
**95** 16:6
**99** 1:17